S. S. MACK v. SOUTH BOUND R. R. CO.

B. S. MACK v. SAME.

1. RAILROADS—NEGLIGENCE—EVIDENCE.—In an action against a railroad company for negligence, at common law, evidence of its failure to give the signals required by statute at public crossings near the accident is competent to support the allegation of reckless negligence.

2. EVIDENCE.—Testimony as to who travels and works a private crossing is irrelevant but harmless in an action for negligence at common law.

3. NONSUIT—NEGLIGENCE—TRESPASS.—The testimony tended to show negligence on the part of the railroad company, and that plaintiff was not an ordinary trespasser, and nonsuit properly refused.

4. RAILROADS—DAMAGES—NEGLIGENCE—FRIGHT.—A railroad company is liable in damages for mental or physical injuries sustained in consequence of fright caused by its negligence.

5. MINORITY—NEGLIGENCE.—Jury not instructed that the minority of plaintiff exempted him from looking and listening for approaching trains.

6. RAILROADS—IBID.—A railroad company is not bound to slacken the speed of its train upon seeing one approaching its track, unless the circumstances indicate that he does not, or cannot, see the train.

7. CHARGE—EXEMPLARY DAMAGES—NEGLIGENCE.—Upon examination of whole charge, it is evident that Judge did not intend to charge that defendant was liable for exemplary damages in case there was only ordinary negligence.

8. RAILROADS—STOCK—NEGLIGENCE.—The killing of stock by a railroad train raises the presumption of negligence, and that presumption is not destroyed by the mere fact that the witnesses have detailed the circumstances of the killing.

9. CHARGE—EXEMPLARY DAMAGES.—Charge as to circumstances under which smart money may be given correct.

Before BUCHANAN, J., Lexington, September, 1896. Affirmed.

Action by Stewart Spearman Mack, by guardian *ad litem*, against South Bound Railroad Company and by Barnett Salley Mack against same. Judgment in both cases for plaintiffs. Defendant appeals.

*Messrs. W. H. Lyles* and *C. J. C. Hutson*, for appellant, cite: *Statutory signals at public crossings are intended only for benefit of public crossing at them:* 33 S. C., 136; 34 S. C., 444; 39 S. C., 514. *No recovery for injury sustained at other places on railroad than public crossings, except in cases of gross negligence:* 12 S. E. R., 555; 13 S. E. R., 137; 22 C. C. Ap. Rep., 121; 58 N. W. R., 79; 44 Cent. L. J., 10; 23 S. C., 531; 19 S. C., 20; 45 Cent. L. J., 125; 41 S. W. R., 62. *No liability exists for damages caused by fright:* 45 N. E. R., 354; 6 U. S. C. Ct. of Ap., 432. *Servants of railroad are not required to exercise more care as to minors of the age of discretion than to others:* 25 S. C., 24; 27 S. C., 456; 17 S. E. R., 952; 91 Ga., 526. *Punitive damages should not be given for mere negligence, and not necessarily in other cases:* 34 L. R. A., 205.

*Messrs. Abney & Thomas*, contra, cite: *Rule as to negligence by railroad:* 20 S. C., 249; 19 Am. & Eng. R. C., 466; 20 S. C., 259; 50 S. C., 49; 23 S. C., 531; 19 S. C., 20; 34 S. C., 292; 35 S. C., 493. *The person causing mental or physical disease, either indirectly or directly, from*

*fright or nervous shock occasioned by his acts, is responsible therefor:* 151 N. Y., 107; 31 Am. L. R., 589; 4 A. & E. R. Cas., 182; 79 Ala., 328; 73 Wis., 147; 73 Ia., 241; article by Algernon Sydney Morton on damages for consequences of fright caused by negligence, in The University Law Review, March, 1897. *Stock being killed by railroad presumes negligence:* 26 S. C., 49.

April 19, 1898. The opinion of the Court was delivered by

MR. JUSTICE GARY. The above entitled actions were commenced on the 15th of August, 1895, and by consent were tried together before his Honor, Judge Buchanan, and a jury, at the September, 1897, term of the Court for Lexington County. The 5th paragraph of the first cause of action in the first of the above entitled actions is as follows: 5. "That on the afternoon of the said mentioned day, between 6 and 7 o'clock, the plaintiff, Stewart Spearman Mack, as was his wont and customary duty, was sent by his father to drive the cows from the pasture, which was on the south side of said railroad, at or near the seven mile-post; that while engaged in driving said cattle from said pasture to the house of said Barnett Salley Mack, which was on the north side of said railroad track, it being necessary to cross the track at a private crossing which had been in use for years, and which use was well known to the defendant, the plaintiff, who was riding a mule, being unable to control said mule, on account of his tender age and lack of strength, was carried by said mule, which had become unruly and unmanageable, in and upon the track of defendant, at or near the said seven mile-post; and in endeavoring to get said mule off said track, the plaintiff alighted, and was pulling the said mule by the bridle and a plowline attached thereto, away from and across said track; and while so engaged, his attention being absorbed in his efforts to control the mule and prevent him from going further down the track and getting away from him—being in open and plain view of an approaching train from the south for half a mile or

more—a locomotive with a train of cars attached, belonging
to the defendant, its agent, lessee or lessees, without any
signal or warning whatsoever, running at a rapid and reck-
less rate of speed towards Columbia, came upon the plaintiff,
who was not aware of its approach, on account of his being
so engaged in endeavoring to get the mule off said track, and
struck the mule and instantly killed the same; the plaintiff,
in order to save his own life, threw himself down between and
along the cross-ties just outside of the rail, bruising and in-
juring his person, and just barely escaped being struck by
the locomotive and cars of said defendant, its servants and
agents, which said locomotive and cars ran immediately over
and above the plaintiff at a rate of speed of more than *sixty*
miles an hour; and being of such tender age, inexperienced
and ignorant of the operation of railroads, and the running
of locomotive cars thereon; and owing to the great and im-
minent danger in which he was and the reckless movement
of said train over him, was terribly frightened, his nervous
system was shocked, his mind was affected and partially
destroyed, his reason unbalanced, and he, for a long time,
was made ill and sick, and suffered great mental anguish
and physical pain, arising from the terrible shock to his
nervous system and the fright which he received; and by
reason thereof he was incapacitated from performing or at-
tending to his ordinary duties, and his capacity for work
greatly diminished; and he will for a long time and proba-
bly will for the balance of his life, be affected in mind and
body, and it will, to a great extent, affect his means of
making a livelihood, and of advancing his happiness in life;
that prior to said accident and injury he was perfectly
healthy and sound, both physically and mentally, and had
every reason to think and believe that he would so continue;
but the injury to his mind and body, by reason of such fright
and nervous shock, has greatly diminished his capacity for
performing his duties, and will hereafter diminish and affect
his capacity and means of acquiring property, and means of
advancing his happiness in life, which he had a right to

expect that he would be fully able to do, and acquire all those means of happiness which he, as a perfectly healthy and sound person, could have acquired; and he will hereafter pass through life subject to the effects which said fright and nervous shock have produced." The specifications of negligence are alleged in paragraph 6 thereof, as follows, to wit: 6. "That the South Bound Railroad Company, its servants, agents, lessee or lessees, were negligent in this: that although the plaintiff and the mule he was endeavoring to pull away from the track could be seen for at least one-half a mile, and were in plain and open view of the engineer driving the locomotive—the track at said point being perfectly straight—and although the said train could have been easily stopped before it reached the point on said track where the plaintiff and mule were, the engineer in charge of said locomotive made no effort whatsoever to stop or diminish the rate of speed of the train, nor did he give any signal, either by the sounding of the steam whistle of the locomotive or by the ringing of the bell thereon, nor did he take or exercise any prudence or foresight, or do anything whatsoever to prevent the running of the said train upon the plaintiff and said mule; but that the said engineer and persons in charge of said locomotive and train, although they saw, or could easily have seen, by the exercise of the slightest outlook or observation upon the track in front of said advancing locomotive and train, the plaintiff and the mule, and did see, or could have easily seen, by the slightest observation or outlook from the train, that he was a child of tender years and endeavoring to get his mule across the track; and although the said engineer or persons in charge of said locomotive saw, or could have easily seen, by the exercise of any prudence or outlook whatsoever, that the plaintiff was not aware of the approach of the train, yet the said engineer or persons in charge of said locomotive and train, carelessly, negligently, without any prudence or foresight, or observation or outlook, which he should have kept upon the track before him, ran the said locomotive and train, at a reckless

rate of speed, over said plaintiff and against said mule, and so injured and frightened the plaintiff as above stated, and instantly killed the mule; and that by reason of the said negligent act and want of care on the part of the defendant, its servants, agents, lessee or lessees, the plaintiff was damaged in his person, mind, and health, $2,500."

The allegations of the second cause of action set forth in said complaint, are substantially the same as those contained in the first cause of action, except the acts of negligence on the part of the defendant, are alleged to have been willful, malicious, wanton, and reckless, by reason of. which the plaintiff claimed exemplary damages.

The second complaint was brought by Barnett Salley Mack, the father of Stewart Spearman Mack, in which the allegations are substantially the same as those set forth in the first cause of action in the first complaint. In the first cause of action, he claimed damages for the killing of his mule, which he valued at $175. The second cause of action alleged in said complaint, was for the injuries alleged to have been sustained by his son, and the plaintiff asked damages for the loss of services of his son, and expenditures for medicines, medical attention and care of his son in the sum of $1,200.

The defendant answered both complaints, and, in effect, denied generally the allegations of the complaint, and set up the defense of contributory negligence both on the part of the father and the son. At the close of the plaintiff's testimony, the defendant made a motion for a nonsuit, which was refused. The jury rendered a verdict in favor of Stewart Spearman Mack for $650, and a verdict for Barnett Salley Mack for $335.

The defendant appealed upon exceptions, the first of which is as follows: 1. "Because, against the objection of the defendant, his Honor, the presiding Judge, allowed the witnesses produced for the plaintiff to testify as to the failure of the train which caused the accident to give the statutory signals upon approaching the

Augusta Road crossing, and other road crossings." Some of this testimony was admitted without objection, and it is questionable whether the objection was properly interposed as to the other part of said testimony. Furthermore, it does not appear that the presiding Judge ruled upon the admissibility of said testimony. But said testimony tended to show an utter disregard of the requirements of law as to the manner of running the train, and was responsive to the allegation of reckless negligence. This exception is, therefore, overruled.

The second exception is as follows: 2. "Because his Honor, the presiding Judge, allowed the witness, John Weston, to testify, against the objection of the defendant, in answer to the question, 'Who travels that last road, what kind of people?' when it had been admitted that the accident had not occurred at the crossing, and the crossing had nothing to do with it." The testimony was irrelevant, but harmless. This exception is overruled.

The third exception is as follows: 3. "Because his Honor, the presiding Judge, against the objection of the defendant, allowed other witnesses to testify as to the character of the crossings on the Augusta road and the plantation road crossing." Waiving the objection to this exception, that it is too general, still it cannot be sustained, as the testimony, although irrelevant, was harmless.

The fourth exception is as follows: 4. "Because, against the objection of the defendant, his Honor, the presiding Judge, allowed a witness, Barnett Salley Mack, to testify that the railroad hands worked the plantation road crossing." Even if there was error, it was harmless, and this exception is overruled.

The fifth exception is as follows: 5.. "Because his Honor, the presiding Judge, refused the motion for a nonsuit upon the grounds stated in the Case for Appeal." Waiving the objection to this exception, that it is not sufficiently specific, it cannot be sustained. The

grounds upon which the defendant made the motion for a nonsuit are as follows: 1. "That the action could not be maintained as an action under the statute regulating the giving of signals at crossings, because it was proven that it had not occurred at any crossing or traveled place." 2. "That the action could not be maintained as a common law action for negligently injuring the plaintiff, Stewart Spearman Mack, or negligently killing the mule, because the evidence did not tend to establish any negligence on the part of the railroad company, through its servants, in the running of the train which caused the injury." The first ground cannot be sustained for the reason that the plaintiff distinctly stated upon the trial of the case that the action was not brought under the statute. The second ground cannot be sustained, as the allegations of the complaint and the testimony adduced to support them showed that this was not the case of an ordinary trespasser. There was testimony tending to prove every material allegation of the complaint, and this exception is overruled.

The sixth and seventh exceptions, which will be considered together, are as follows: 6. "Because his Honor, the presiding Judge, refused, upon request of the defendant, to charge as follows, to wit: 'It being admitted that there was no actual collision between the plaintiff, Stewart Spearman Mack, and the defendant's train, and no physical injury resulting from such a collision at any public crossing, traveled place, or any other place, the defendant's servants were not bound to have stopped the train because it ran in proximity to the plaintiff, and the defendant is not responsible for the consequences of fright occasioned thereby.'" 7. "Because his Honor charged the jury as follows, to wit: 'But if the defendant, by their servants, were guilty of a lack of ordinary care, and had run upon the plaintiff, thus making itself liable for negligence, and, while guilty of such lack of ordinary care, ran so immediately upon the plaintiff that he had to jump, being impressed with the overweening necessity to jump, and such necessity

not having been brought upon himself, and he had to jump beyond and off of the track, and if he were injured by such lack of ordinary care, then that would be a natural and proximate injury, such as the law gives an action for, and they would be responsible for the consequences of such natural fright, if such fright were so caused;' thereby erring in indicating that a mere 'lack of ordinary care' on the part of the defendant would make the defendant liable for the consequences of natural fright caused by running in proximity to the plaintiff, and that irrespective of questions of contributory negligence on the part of the plaintiff." In disposing of this request, his Honor said: "I cannot charge this request as framed, because the Court cannot say that no physical injury has resulted to the plaintiff here, and the use of the word 'proximity,' associated with the language here in the request to charge, would be open to a construction that the Court could not charge. But I charge you this: They were not obliged to stop, because of the nearness to the track, by reason of the plaintiff being near to the track, nor would they be liable for such injury, provided the plaintiff exercised due and proper care, according to his age and circumstances; but if the defendant, by its servants, was guilty of a lack of ordinary care, and had run upon the plaintiff, thus making itself liable for negligence, and, while guilty of such lack of ordinary care, ran so immediately upon the plaintiff, that he had to jump, being impressed with the overweening necessity to jump, and such necessity not having been brought upon himself, and he had to jump beyond and off of the track, and if he were injured by such lack of ordinary care, then that would be a natural and proximate injury, such as the law gives an action for, and it would be responsible for the consequences of such natural fright, if such fright was so caused. Now I have made that definite for the purpose of showing you the meaning of the word 'proximity.' A railroad does not have to stop, in these days of fast trains, when a person is close to its track, unless they see that he is going upon the track, or unless, if they

stop exercising the care of an ordinary person, some injury would result. But while they don't owe that duty—suppose a man were approaching in such a condition and at such an angle to the railroad, and the fireman or the servants were to see him in time to stop, and they were to see that there was something the matter with this man, judging from his actions, that he could not have heard the train, or to impress them with the fact that he was deaf, and if they did not stop the train he would continue, and it would result in a collision with him upon the track of the railroad, then I say that if they were so impressed, and were to go on and thereby make that act an act of willfulness, although he may be guilty of carelessness and negligence in going across the track, yet that would not excuse the railroad, if they could have avoided it by exercising ordinary care, because he is in the wrong and they could have avoided it—they should not go upon and kill a person or run over property when it could be avoided, no matter whether the man is in the wrong—I mean, in the sense that such injury would be wilful. I, therefore, charge that with this modification, and so far as consistent with the matter requested here." For the first time, the question is presented to this Court, whether a railroad company is liable for injuries sustained in consequence of fright caused by its negligence. The authorities are very conflicting, and those which decide that the railroad is not liable for such injuries, are not in harmony as to the reason for such rule. In the case of *Mitchell* v. *Rochester Ry. Co.* (N. Y.), 34 L. R. A., 781, and cases therein cited, it is held that the railroad company is not liable on the ground that damages for such injuries are too remote. While in the case of *Spade* v. *Lynn and Boston R. R. Co.* (Mass.), 38 L. R. A., 512, the Court says: "This case presents a question which has not heretofore been determined in this commonwealth, and in respect to which the decisions elsewhere have not been uniform. It is this: whether in an action to recover damages for an injury sustained through the negligence of another, there can be a recovery for a bodily in-

jury caused by mere fright and mental disturbance. The jury were instructed that a person cannot recover for mere fright, fear or mental distress, occasioned by the negligence of another, which does not result in bodily injury, but that when the fright or fear or nervous shock produces a bodily injury, there may be a recovery for that bodily injury, and for all the pain, mental or otherwise, which may arise out of that bodily injury. * * * The exemption from liability for mere fright, terror, alarm or anxiety does not rest on the assumption that these do not constitute an actual injury. They do, in fact, deprive one of enjoyment and of comfort, cause real suffering, and, to a greater or less extent, disqualify one for the time being from doing the duties of life. If these results flow from a wrongful or negligent act, a recovery therefor cannot be denied on the ground that the injury is fanciful and not real. Nor can it be maintained that these results may not be the direct and immediate consequence of the negligence. Danger excites alarm. Few people are wholly insensible to the emotion caused by imminent danger, though some are less affected than others. It must also be admitted that a timid or sensitive person may suffer, not only in mind, but also in body, from such a cause. Great emotion may, and sometimes does, produce physical effects. The action of the heart, the circulation of the blood, the temperature of the body, as well as the nerves and appetite, may all be affected. A physical injury may be directly traceable to fright, and so may be caused by it. We cannot say, therefore, that such consequences may not flow proximately from unintentional negligence; and if compensation in damages may be recovered for a physical injury so caused, it is hard, on principle, to say why there should not also be a recovery for the mere mental suffering when not accompanied by any perceptible physical effects. It would seem, therefore, that the real reason for refusing damages sustained from mere fright, must be something different, and it probably rested on the ground that in practice it is impossible satisfactorily to administer any other rule.

* * * The logical vindication of this rule is, that it is unreasonable to hold persons, who are merely negligent, bound to anticipate and guard against fright and the consequences of fright, and that this would open a wide door for unjust claims, which could not successfully be met. These views are supported by the following decisions: *Victorian R. Comrs.* v. *Coultas*, L. R., 13 App. Cas., 222; *Mitchell* v. *Rochester R. Co.*, 151 N. Y., 107; 34 L. R. A., 781; *Ewing* v. *Pittsburg, C. C. & St. L. R. Co.*, 147 Pa., 40; 14 L. R. A., 666; *Haile* v. *Texas & P. R. Co.*, 9 C. C. A., 134; 23 U. S. App., 80; 60 Fed. Rep., 557; 23 L. R. A., 774. In the following cases a different view was taken: *Bell* v. *Great Northern R. Co.*, L. R. Ir.; 26 C. L., 428; *Purcell* v. *St. Paul City R. Co.*, 48 Minn., 134; 16 L. R. A., 203; *Fitzpatrick* v. *Great Eastern R. Co.*, 12 U. C. Q. B., 645. See, also, Beven Neg., 77, *et seq.* It is hardly necessary to add that this decision does not reach those classes of action where an intention to cause mental distress or to hurt the feelings is shown, or is reasonably to be inferred—as, for example, in cases of seduction, slander, malicious prosecution or arrest and some others. Nor do we include cases of acts done with gross carelessness or recklessness, showing utter indifference to such consequences, when they must have been in the actor's mind. *Lombard* v. *Lennox*, and *Fillebrown* v. *Hoar*, already cited; *Meagher* v. *Driscoll*, 99 Mass., 281, 96 Am. Dec., 759." We are much impressed with the reasoning of the Court in the case of *Sloane* v. *Southern California Ry. Co.* (Cal.), 32 L. R. A., 193, in which the following language is used: "The real question presented by the objections and exception of the appellant, is whether the subsequent nervous disturbance of the plaintiff was a suffering of the body or of the mind. The interdependence of the mind and body is in many respects so close that it is impossible to distinguish their respective influence upon each other. It must be conceded that a nervous shock or paroxysm, or a disturbance of the nervous system, is distinct from mental anguish, and falls within the physiological, rather than the psycho-

logical, branch of the human organism. It is a matter of general knowledge, that an attack of sudden fright, or an exposure to imminent peril, has produced in individuals a complete change in their nervous system, and render one who was physically strong and vigorous, weak and timid. Such a result must be regarded as an injury to the body rather than to the mind, even though the mind be at the same time injuriously affected. Whatever may be the influence by which the nervous system is affected, its action under that influence is entirely distinct from the mental process which is set in motion by the brain. The nervous and nerve centres of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. If these nerves, or the entire nervous system, are thus affected, there is a physical injury thereby produced, and, if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect, through some action upon the mind. * * * The mental condition, which superinduced the bodily harm in the foregoing cases, was fright, but the character of the mental excitation by which the injury to the body is produced, is immaterial. If it can be established that the bodily harm was the direct result of the condition, without any intervening cause, it must be held that the act which caused the condition, set in motion the agencies by which the injury was produced, and is the proximate cause of such injury." In the case of _Purcell_ v. _St. Paul City Ry. Co._ (Minn.), 16 L. R. A., 203, the Court says: "Of course, negligence without injury gives no right of action. On the argument there was much discussion of the question whether fright and mental distress alone constitute such injury that the law will allow a recovery for it. The question is not involved in the case. So it may be conceded that any effect of a wrongful act or neglect on the mind alone will not furnish ground of action. Here is a physical injury, as serious, certainly, as would be the breaking of an arm or leg. Does

the complaint show that defendant's negligence was the proximate cause of that injury? If so, the action will, of course, lie. What is in law a proximate cause, is well expressed in the definition often quoted with approval, given in *Milwaukee & St. Paul R. Co.* v. *Kellogg*, 94 U. S., 469, 24 L. Ed., 256, as follows: 'The primary cause may be the proximate cause of a disaster, though it operate through successive instruments—as an article at the end of a chain may be moved by force applied to the other end, that force being the proximate cause of the movement; or, as in the oft cited case of the squib thrown in the market place. *Scott* v. *Shepherd*, 2 W. Bl., 892. The question always is, was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?' There may be a succession of intermediate causes, each produced by the one preceding, and producing the one following it. It must appear that the injury was the natural consequence of the wrongful act or omission. The new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring the injurious result. Whether the natural connection of events was maintained or was broken by such new, independent cause, is generally a question for the jury. In this case, the only cause that can be suggested as intervening between the negligence and the injury, is plaintiff's condition of mind, to wit: her fright. Could that be a natural adequate cause of the nervous convulsions? The mind and body operate reciprocally on each other. Physical injury or illness sometimes causes mental disease; a mental shock or disturbance sometimes causes injury or illness of, body, especially of the nervous system. Now, if the fright was the natural consequence of—was brought about, caused by— the circumstances of peril and alarm in which defendant's negligence placed plaintiff, and the fright caused the nervous

shock and convulsions, and consequent illness, the negligence was the proximate cause of those injuries. That a mental condition or operation on the part of the one injured comes between the negligence and the injury, does not necessarily break the required sequence of intermediate causes." Mr. Sedgwick, in his work on Damages (8th ed.), vol. 2, page 642, in commenting on the opinion of. Palles, C. B., in the case of *Bell* v. *Great Northern Ry. Co.*, 26 L. R. Ir., 428, says: "The learned Chief Baron then referred to the case of *Victorian Railway Commissioners* v. *Coultas* (13 App. Cas., 222), in which the privy council held that mere mental terror was not a consequence which would ordinarily flow from the negligence proved in that case. This case, however, was not approved; but the Court followed an earlier unreported Irish case (*Bryne* v. *Great Southern & W. Ry. Co.*, in the Court of Appeals), where compensation for injury resulting from nervous shock was allowed in a much stronger case than the one at bar. The learned Chief Baron continued (p. 442): 'In conclusion, I am of opinion that, as the relation between fright and injury to the nerve and brain structures of the body is a matter which depends entirely upon scientific and medical testimony, it is impossible for any Court to lay down, as a matter of law, that if negligence cause fright, and such fright, in its turn, so affects such structures as to cause injury to health, such injury cannot be a consequence which, in the ordinary course of things, would flow from the negligence, unless such injury accompany such negligence in point of time.' The principle adopted in this case would seem to be the true one. The negligence of the company being admitted, any injury directly resulting should be compensated." See, also, *Mentzer* v. *W. U. T. Co.* (Iowa), 28 L. R. A., 72. These views are in harmony with the principles laid down in the case of *Harrison* v. *Berkley*, 1 Strob., 525, which was an action for damages against a shop-keeper for unlawfully selling whiskey to a slave, by means whereof he became intoxicated and died. In that case the Court said: "It is, therefore, re-

quired that the consequences to be answered for, should be
natural as well as proximate (7 Bing., 211; 5 B. & Ad., 645).
By this I understand not that they should be such as upon
a calculation of chances would be found likely to occur nor
such as extreme prudence might anticipate, but only that
they should be such as have actually ensued, one from an-
other, without the concurrence of any such extraordinary
conjuncture of circumstances or the intervention of any such
extraordinary result as that the usual course of nature should
seem to have been departed from.    In requiring concurring
consequences, that they should be proximate and natural to
constitute legal damage, it seems that in proportion as one
quality is strong, may the other be dispensed with; that
which is immediate cannot be considered unnatural; that
which is reasonably to be expected, will be regarded, al-
though it may be considerably removed (20 Wend., 223). * * *
The defendant, however, has further insisted that if the
drinking and intoxication were the proximate and natural
consequences of his act, the exposure and death were not;
but that the death resulted mainly from the exposure, and
not from the intoxication only.    It may well be said (speak-
ing in the language of everyday life, which attempts no
philosophical analysis), that the exposure was the immedi-
ate effect of the intoxication, and that the two produced the
death.    Thus, without any unconnected influence to be per-
ceived, the death has come from the intoxication, which the
defendant's act occasioned.    The defendant cannot complain
that an agent, which his own act naturally brought into
operation, has occurred to produce the result."    We are sat-
isfied that the reasoning is in favor of the liability of a rail-
road company in such cases, and that as a general proposition
it is liable for such injuries where there is a lack of ordinary
care.    These exceptions are overruled.

The eighth and ninth exceptions will be considered to-
gether, and are as follows: 8. "Because his Honor, the pre-
siding Judge, refused, upon request of the defendant,
to charge as follows, to wit: 'It being admitted that

the plaintiff, Stewart Spearman Mack, suffered no injury at any traveled place or public crossing referred to in the statute, any failure on the part of the defendant's servants to ring a bell or blow a whistle at any such traveled place or public crossing was not evidence of such negligence on the part of the defendant in this case as will entitle the plaintiff to a recovery.'" 9. "Because his Honor, the presiding Judge, in connection with his refusal of such request, charged as follows, to wit: 'It is not charged that it was at a public highway or crossing, and that, therefore, the mere omission to ring the bell or blow the whistle would not be conclusive presumption of negligence, this being a common law action, should be taken as a circumstance only. I so charge that request with that qualification; that the injury is not charged to have been committed at a crossing, whereby the application of this principle and rule of evidence, making it conclusive presumption of negligence from the omission to ring the bell or blow the whistle, will apply; thereby erring in indicating that the failure to give the statutory signals at the Augusta Road crossing and other crossings was a circumstance from which the jury might infer negligence." A request to charge must be construed with reference to the issue made by the pleadings and the testimony adduced upon the trial of the case. If the presiding Judge had charged the request in the form in which it was presented, he would have invaded the province of the jury. The testimony, as we have said, was competent for the purpose of showing an utter disregard of the requirements of law, as to the blowing of the whistle, nnd was responsive to the allegation of recklessness on the part of the defendant. Even if the defendant was not required by the statute to blow the whistle in approaching the crossing before it reached the plaintiff, still it was a matter for the consideration of the jury, whether there was negligence in blowing the whistle at that time, not as a requirement of the statute, but as a fact showing a want of due care on the part of the defendant, under the circumstances of the case. *Czech* v. *Great*

*N. Ry. Co.* (Minn.), 38 L. R. A., 302. These exceptions are overruled.

The tenth exception is as follows: 10. "Because his Honor, the presiding Judge, refused the request of the defendant to charge as follows, to wit: 'If the jury believe that the plaintiff, while looking and listening, could hear the train, and that any ordinary prudent person would, under like circumstances, have done so, then he was negligent; and if, then, under those circumstances, he went on the track, in view of an approaching train, the plaintiff cannot recover;' but modified the same by adding, 'I charge you that, with this modification: The person there refers to an adult, and due care is owing to the circumstances of the person—his duty would be greater to a minor;' thereby erring in indicating to the jury that the mere minority of the plaintiff, Stewart Spearman Mack, although a boy of fourteen or fifteen years of age, would exempt him from the obligation to look and listen for an approaching train." The intention of the presiding Judge, in modifying the request, was to make it responsive to the allegations of the complaint. The charge of the presiding Judge is not susceptible of the construction set forth in the exception. The minority of the plaintiff was a fact to be considered by the jury in determining the question of negligence; but his Honor did not charge the jury that the mere minority of the plaintiff would exempt him from the obligation to look and listen for an approaching train. This exception is overruled.

The eleventh exception is as follows: 11. "Because his Honor, the presiding Judge, refused, upon request of the defendant, to charge as follows, to wit: 'If the jury find that the defendant's servants had every reason to suppose that the plaintiff, or any prudent person, would not go upon the track, there was no negligence in running trains at a fast speed, and the plaintiff cannot recover;' but modified the same by adding, 'I charge you that, with the modification of the preceding charge; charge both together;'

thereby erring in indicating that the mere minority of the plaintiff, Stewart Spearman Mack, would make it negligence on the part of the servants of the company to have run the train rapidly, even though they had every reason to suppose that the plaintiff would not go upon the track." This exception is disposed of by what was said in considering the tenth exception.

The twelfth exception is as follows: 12. "Because his Honor, the presiding Judge, refused, upon request of the defendant, to charge the jury, that 'the defendant was not bound to slacken speed of train where no reasonable ground existed for the supposition that the plaintiff would go on or near the track,' but modified the same by saying, 'I charge you that, with the limitation of nearness to the track that I have indicated heretofore.'" (*See quotation from charge under exception 7, supra.—R.*) Waiving the objection to this exception, that it fails to point out any specific error of law, still the modification of the request by the presiding Judge was not erroneous.

The thirteenth exception is as follows: 13. "Because his Honor, the presiding Judge, refused, upon the request of the defendant, to charge, 'That, even if the jury should believe that no signals were given at or near any crossing, yet the defendant would not be liable if it was reasonable to suppose that no ordinarily prudent person would attempt to go near or upon a track when the train was plainly in sight and advancing, and when the defendant's servants had every reason to suppose that the plaintiff was aware of the fact;' but modified the same by adding, 'well, as an abstract proposition, that is so. Prudent person of ordinary intelligence applies to an adult, applies to a person who can take care of himself, who is supposed to have average intelligence;' thereby erring by indicating that the mere minority of the plaintiff, Stewart Spearman Mack, would make the failure to give the signals at or near the crossing neligence towards the plaintiff, although the train was plainly in sight and advancing, and the servants of the defendant had every

reason to suppose that the plaintiff was aware of the fact."
This exception does not contain all the remarks of his Honor
in charging the request.    They are as follows: "Well, as an
abstract proposition, that is so.    Prudent person of ordinary
intelligence applies to an adult, applies to a person who can
take care of himself, who is supposed to have average in-
telligence.    In addition to that, as I have indicated before
in my charge on one of these requests, signals were required
at a traveled place; that conclusiveness of presumption
from the omission to ring the bell or blow the whistle, ap-
plied to a public highway, street or some crossing like that;
but that does not deprive the plaintiff of his right at all, nor
does it relieve them of their duty that the law lays upon
them, if necessary to make signals for the purpose of avoid-
ing an accident in exercising ordinary care and prudence."
This exception is disposed of by what was said in consider-
ing the other exceptions, and is overruled.

The fourteenth exception is as follows: 14. "Because his
Honor, the presiding Judge, refused, upon request of the
defendant, to charge the jury, 'That the jury cannot render
any verdict for punitive damages, unless the evidence is
clear that the defendant's servants were guilty of the
most reckless, gross, and malicious negligence;' but
modified the same by adding, 'Well, I cannot charge
that, as stated there, because the plaintiff must recover by
the preponderance of the evidence.    I suppose, what counsel
meant to say was, 'guilty of reckless, wanton, wilful, mali-
cious or acts of gross negligence, that is the general rule;
punitive or smart money is given where the action has been
prompted by recklessness, by wantonness, by wilfulness, by
malice, or happened through negligence;' thereby erring
in indicating that the jury might give punitive damages or
smart money upon injury suffered through ordinary negli-
gence."    When the charge is considered in its entirety, and
when all of his Honor's language in refusing to charge the
request is taken into consideration, it is evident that the
presiding Judge did not intend to charge that the defendant

was liable for exemplary damages in case there was only ordinary negligence. This exception is overruled.

The fifteenth exception is as follows: 15. "Because his Honor, the presiding Judge, in summing up, charged the jury as follows, to wit: 'This is not an action for a collision at a street or highway or public traveled place; therefore, the omission of the signals (as I have already charged you), required by the statute for such crossing, does not necessarily presume or make carelessness in cases of this character, but you may take them as circumstances that may or may not throw light upon the subject, and show a presence or want of ordinary care with reference to either or all the causes of action;' thereby erring in indicating to the jury that the failure to blow the statutory signals at the Augusta road crossing and other public crossings were circumstances that might be considered as proving negligence on the part of the defendant." This exception is disposed of by what was said in considering the other exceptions, and is overruled.

The sixteenth exception is as follows: 16. "Because his Honor, the presiding Judge, charged the jury as follows, to wit: 'While the mere finding of cattle, horses or mules killed upon the railroad raises presumption of negligence, making it a rule of negligence, has not been modified by the adoption of the stock law, yet it is an element to be taken into consideration in considering the question of negligence;' thereby indicating to the jury that the mere finding of the body of the mule near the railroad track was a circumstance that they might take into consideration in determining the question of negligence, although the plaintiff's witnesses had given full testimony as to all the circumstances attending the killing. The killing of the mule by the defendant raised the presumption of negligence on the part of the defendant, and this presumption continued until it was rebutted by the testimony. The fact that the witnesses were examined by plaintiff in regard to the killing of the mule did not destroy the presumption

arising from the mere fact of killing, nor prevent the application of that rule. If the facts showed that there was no negligence, then, of course, the presumption would be ineffectual. This exception is overruled.

The seventeenth exception is as follows: 17. "Because his Honor, the presiding Judge, further charged the jury: 'I say the finding of the animal upon the track raises a presumption of negligence; it is only a presumption—it may be rebutted—but that is a presumption the law raised; and if you come to the conclusion that the mule was killed through the lack of care upon the part of the railroad, and the presumption is confirmed, the presumption is not rebutted, then the value would be the value of the mule;' thereby indicating that the mere finding of the body of the mule near the railroad track was a circumstance to be taken into consideration by the jury in determining the question of negligence." The killing of the mule was not disputed, and this was sufficient to sustain the presumption of negligence. So that, even admitting that there was error, it was harmless. This exception is overruled.

The eighteenth exception is as follows: 18. "Because his Honor, the presiding Judge, charged the jury as follows, to wit: 'The damages to the son may be ordinary compensatory damages, or, if there be gross negligence, gross carelessness, or recklessness, or wanton disregard, or malice, then go one step further: you may give him not only such damages as will compensate him, but give him smart money, punitive damages, to punish defendant;' thereby indicating that it was the duty of the jury in such case to give smart money, punitive damages, to punish defendant." His Honor stated the circumstances under which the jury had the right to give smart money, and there was no error in his charge. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.