# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

K.S., a minor, by and through his Guardian ad Litem, James Seeger, Petitioner,

v.

Richland School District Two, Respondent.

Appellate Case No. 2022-001408

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Richland County
Jocelyn Newman, Circuit Court Judge

---

Opinion No. 28254
Heard April 16, 2024 – Filed January 23, 2025

---

## REVERSED IN PART, AFFIRMED IN PART, VACATED IN PART, AND REMANDED

---

Andrew Sims Radeker, of Radeker Law, P.A., of Columbia, for Petitioner.

Thomas Kennedy Barlow, of Mahoney & Williams, of Columbia, for Respondent.

---

**JUSTICE HILL:** James Seeger, as the father and guardian of K.S., sued Richland School District Two (the District), alleging the District was grossly negligent in supervising K.S.'s first grade teacher and also seeking to hold the District liable

under the theory of respondeat superior for injuries K.S. suffered at the teacher's hands.

The trial court granted the District a directed verdict, ruling the District could not be liable for negligence because K.S. suffered no physical injury. The court of appeals affirmed. We granted certiorari to review the trial court's directed verdict ruling, its exclusion of Seeger's expert, and its ruling that the Safe School Climate Act (Safe Schools Act) did not repeal the South Carolina Tort Claims Act (Tort Claims Act). We reverse the directed verdict ruling and the exclusion of Seeger's expert. We affirm the trial court's ruling that the Safe Schools Act did not repeal the Tort Claims Act.

## II. Facts

Because we are reviewing the grant of a directed verdict to the District, we are bound to review the facts in the light most favorable to Seeger. K.S. began the first grade in 2011 at an elementary school in the District. He was six years old. His teacher–described by one administrator as "no nonsense," loud, and gruff–had thirty years of experience. But as this school year began, the teacher was under personal stress due to family issues.

The first inkling of the teacher's misconduct emerged in late September when she humiliated one of K.S.'s classmates in the media center, causing the classmate to sob. The media center director and her assistant reported this incident to the principal. The second incident happened a few weeks later when the teacher humiliated K.S, reducing him to tears. This incident again occurred in front of the entire class and other school personnel. Again, the media center director immediately reported the misconduct to the principal.

On October 20, 2011, after going through the lunch line in the cafeteria, K.S. dropped his tray. He began to cry. A cafeteria worker helped K.S. clean the food off the floor and suggested K.S. go back through the line. K.S. did, returning holding a corn dog. The cafeteria worker then saw the teacher appear and scold K.S. "very harshly," and instruct him to get another tray. When K.S. returned bearing the tray, he was still crying. The worker witnessed the teacher grab K.S. "very forcefully by the arm" and lead him away while telling him, "I will give you something to cry for." The teacher then made K.S. sit at a table by himself. K.S. testified it hurt when the teacher grabbed his arm because she clawed him with her fingernails. Later that day, the cafeteria worker reported the incident to the school administration.

The principal moved K.S. to another classroom the next day. He also began an investigation. The investigation confirmed all three episodes of the teacher's misconduct. It revealed other troubling things about how the teacher had treated K.S., including her attempts to prevent K.S. from keeping encouraging notes from his father, her tacit approval of a "no crying club" in her class that excluded K.S., and other times she isolated K.S. in class. The teacher was placed on leave and resigned in early November.

Seeger testified when K.S. came home the day of the cafeteria incident, he was "a different child." He underwent counseling and later experienced sleeplessness, anger issues, tearfulness, decreased energy, and shaking. He has been under the care of a psychiatrist and diagnosed with persistent depressive disorder and anxiety.

Before trial began, the trial court granted the District summary judgment as to Seeger's claim that the Safe Schools Act repealed the Tort Claims Act in cases alleging school bullying. At trial, a psychologist linked K.S.'s condition directly to his first-grade teacher's conduct. Seeger presented evidence detailing the District's anti-bullying policy, and the protocol the principal and the District were bound to follow. The evidence showed the principal had done nothing about the teacher's conduct until the cafeteria incident was reported to him. When asked about the earlier incidents the media center personnel had reported, the principal testified he "did not recall" hearing about them. During his testimony, the principal used the phrase "I don't recall" or similar words twenty-four times.

Seeger sought to have an expert, Dr. Alan McEvoy, present testimony about teacher-on-student bullying and how the District's response to the teacher's conduct was deficient. Seeger proffered Dr. McEvoy's deposition testimony. The trial court excluded Dr. McEvoy's testimony, ruling it would be needlessly cumulative because Seeger had already "beaten the policy to death," and further evidence on the issue could confuse the jury.

The trial court granted the District a directed verdict, ruling a defendant in a negligence case is not liable for emotional injuries unless the plaintiff also suffers bodily harm. The trial court reasoned the October 20th "touching" did not equate to a "physical injury." The trial court quoted the definition of "physical injury" from Black's Law Dictionary as "physical damage to a person's body." The trial court stated there had "been no testimony of any damage to [K.S.'s] person . . . there were no physical scars . . . ."

The court of appeals affirmed the granting of the directed verdict to the District, holding no evidence showed K.S.'s teacher physically injured him. *K.S., a minor,*

*by and through his Guardian ad Litem, James Seeger v. Richland School District Two*, Op. No. 2022-UP-312 (S.C. Ct. App. filed July 27, 2022). The court of appeals did not reach the merits of the trial court's exclusion of Seeger's expert or its ruling regarding the Safe Schools Act. *Id.*

### III. Law/Analysis

Seeger's claim is not one for the negligent infliction of emotional distress, as the court of appeals found. The cause of action for the negligent infliction of emotional distress is limited to the bystander context. *Kinard v. Augusta Sash & Door Co.*, 286 S.C. 579, 582–83, 336 S.E.2d 465, 467 (1985). Seeger presented two claims against the District. First, Seeger seeks recovery against the District for the negligence and recklessness of the teacher under the theory of respondeat superior. Second, Seeger contends the District was grossly negligent in failing to follow its procedures and properly investigate the teacher's actions and remove K.S. from the teacher's classroom. Included within the gross negligence claim is Seeger's contention that the principal—and, therefore, the District—knew about the two prior incidents of the teacher bullying K. S. but did not take corrective action required by its policies.

Both the trial court and the court of appeals ruled the District was entitled to a directed verdict because the sole reasonable inference from the evidence was that K.S. did not suffer any physical harm. They concluded the teacher's grabbing of K.S.'s arm did not amount to physical harm, and consequently, the District was entitled to judgment as a matter of law on Seeger's negligence claim. We review a directed verdict ruling using the same yardstick as the trial court, which means a directed verdict should not have been granted if the evidence, when viewed in the light most favorable to Seeger, generates more than one reasonable inference.

South Carolina law has long allowed a negligence plaintiff to recover for emotional harm in cases where the plaintiff has also suffered physical harm. *Cf. Norris v. Southern Ry., Carolina Div.*, 84. S.C. 15, 21, 65 S.E. 956, 959 (1909) ("The law in this state does not allow recovery of damages for mental suffering in the absence of bodily injury . . . ."). The physical harm may take one of two forms: physical harm caused by physical impact from an external or outside force, or physical harm consisting of the physical manifestations caused by emotional distress. We begin by considering the first form.

A. <u>Recovery for Emotional Harm Caused by Physical Harm</u>

In these cases, the physical harm occurs before or begins contemporaneously with an emotional one. In examining the physical harm component of the claim, the court

of appeals concluded the teacher's forceful grabbing and clawing of K.S.'s arm did not amount to physical harm because there were no cuts, scratches, or other visible signs of physical injury.

The court of appeals' view of what constitutes physical harm was too narrow. A negligence plaintiff is not required to prove he was cut, scratched, or received some objective physical wound. It is enough if some external force physically impacted the plaintiff's body causing physical harm. For example, a person who has been sexually abused may not have suffered any visible wounds or signs of injury, but no one would contend that person has not been physically harmed. *See Doe v. Greenville Cnty. Sch. Dist.*, 375 S.C. 63, 66–67, 73, 651 S.E.2d 305, 306–07, 310 (2007) (reversing the dismissal of parents' cause of action for negligent supervision where parents alleged school failed to exercise due care in its supervision of teacher who engaged in sexual relationship with parents' minor daughter).

In cases where a plaintiff is seeking damages for emotional harm caused by physical harm, we believe the better policy is to require proof that the physical harm has been caused by some physical impact from an external force. This requirement is the most efficient and effective way we know to ensure the genuineness of such claims. *See Zeno-Ethridge v. Comcast Corp.*, 315 A.3d 978, 984 (Vt. 2024). The trifling bumps and jostles of everyday life should not become pathways to damage claims for emotional harm. The physical harm requirement still forces the plaintiff to prove proximate cause, which includes proving the emotional harm was a foreseeable consequence of the harm. And we have dispensed with the physical harm rule altogether in cases of intentional infliction of emotional distress. *Ford v. Hutson*, 276 S.C. 157, 162, 276 S.E.2d 776, 778–79 (1981); *see generally* Hubbard et. al., *The South Carolina Law of Torts* 43-45 (5th ed. 2023); Dobbs et. al., *The Law of Torts* § 383 & 390 (2d. ed. 2024 Update).

We conclude the teacher's forceful grabbing of K.S. by the arm to the point of producing physical pain was enough evidence to allow the jury to infer it caused sufficient physical harm to support a verdict for negligence. The trial court erred in granting the District a directed verdict as to Seeger's negligence claims. We reverse the decision of the court of appeals affirming the directed verdict and vacate its opinion.

B. <u>Recovery for Physical Harm Consisting of the Physical Manifestations Caused by Emotional Distress</u>

Because we have concluded Seeger's negligence claims may proceed and he may attempt to recover damages for emotional harm to K.S. caused by physical impact,

we need not address Seeger's alternative argument that the emotional distress K.S. has suffered has caused a physical injury entitling him to seek damages for emotional harm. This is the second form of physical harm we mentioned at the outset of this section. This argument relies on a line of cases beginning with *Mack v. South Bound R. Co.*, 52 S.C. 323, 332–38, 29 S.E. 905, 909–11 (1898), and including *Spaugh v. Atl. Coast Line R. Co.*, 158 S.C. 25, 30, 155 S.E. 145, 147 (1930); *Padgett v. Colonial Wholesale Distrib. Co.*, 232 S.C. 593, 606–08, 103 S.E.2d 265, 272 (1958); and *Bray v. Marathon Corp.*, 356 S.C. 111, 118–19, 588 S.E.2d 93, 96 (2003); *see also Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 355 n.1, 650 S.E.2d 68, 70 n.1 (2007). Our decision today does not affect these cases. Our decision today addresses only those negligence cases where damages for emotional harm are sought where the plaintiff has also suffered physical harm caused by a physical impact from an external force. It does not concern negligence cases where it is alleged the defendant's negligent conduct did not cause a physical impact but caused an emotional harm that later manifests into physical symptoms.

### C. Exclusion of Dr. McEvoy's Testimony

#### i. Cumulative Evidence and Confusion of Issues- Rule 403, SCRE

Seeger next contends the trial court erred in excluding the testimony of Dr. McEvoy, his expert witness on anti-bullying policy. As we have noted, the trial court disallowed the testimony on the ground that it was cumulative and would confuse the issues. The trial court was presumably premising its ruling on Rule 403, SCRE, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The trial court did not conduct the Rule 403 balancing test on the record, as is required. *State v. Phillips*, 430 S.C. 319, 341, 844 S.E.2d 651, 662 (2020). In fact, the trial court never mentioned the probative value of Dr. McEvoy's testimony. Gauging a Rule 403 ruling is made needlessly difficult when we have no insight into how or why the trial court struck the balance it did.

We respect the wide discretion trial judges do and should have in making Rule 403 calls. Being far from the field, we are reluctant to upend evidentiary rulings made on the scene. Nowhere is this more true than when dealing with Rule 403, dependent as it often is on a sound grasp of the evidence that has already been heard and how the evidence being challenged may or may not further illuminate the issues to be decided. The trial court is positioned much better than we are to apply the subjective

judgments Rule 403 calls for, which are often informed by a sense of the atmosphere and rhythms of the trial. Still, the trial court's Rule 403 discretion is not limitless, and its Rule 403 ruling exceeds discretion when it lacks legal or factual support.

We find no support for the trial court's ruling that Dr. McEvoy's testimony would have been needlessly cumulative. Seeger presented extensive evidence about the District's anti-bullying policy and how the principal and other District personnel had not followed it. Dr. McEvoy, by contrast, was set to testify to matter that was different in both nature and degree. He was prepared to tell the jury that not only was the District's policy inadequate and flawed, but the principal and other key school personnel had received no meaningful training on how to implement it. He was further poised to offer that the principal's investigation was either non-existent or ineffectual. Dr. McEvoy's testimony would have given the jury new and crucial insight into how the District's policies allowed K.S. to be victimized. Remember that part of Seeger's theory was the District was grossly negligent in supervising K.S.'s first grade teacher. Dr. McEvoy's proposed testimony dovetailed with this theory and would have allowed the jury to tie all of the evidence together. *See Weinstein's Federal Evidence* § 702.03[1] ("Expert testimony is admissible if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context." (footnotes omitted)). Dr. McEvoy explained that had the District's training and policies been adequate, it was likely K.S.'s teacher's downward spiral could have been stopped and the harm to K.S. avoided.

An objection that evidence is needlessly cumulative under Rule 403 is a proper way to stop the unnecessary piling on of repetitive evidence proving the same specific point; it is not a way to keep admissible evidence as to other points from piling up. To paraphrase the late federal judge John F. Keenan, if the issue to be proved is whether Boston Red Sox catcher Carlton "Pudge" Fisk hit a game-winning home run over the Green Monster at Fenway Park in the bottom of the twelfth inning of game six of the World Series on October 21, 1975, it is not necessary to call as witnesses the players on both teams, the umpires, all 35,025 fans in attendance, and the millions who saw it on television. It could be proven with one or two witnesses. *See State v. Funderburke*, 251 S.C. 536, 540, 164 S.E.2d 309, 311 (1968) ("Cumulative evidence has repeatedly been defined to be additional evidence of the same kind to the same point."); *see also United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir. 1996) ("Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial . . . ."). Determining whether evidence is cumulative necessarily requires an exercise of discretion on the part of the trial court. Determining whether evidence

is "needlessly" cumulative under Rule 403 requires the trial court to exercise another layer of discretion.

For many of the same reasons, nothing supports the trial court's conclusion that Dr. McEvoy's testimony would have confused the issues before the jury. If anything, his testimony had the potential to enlighten and provide clarity as to the essential matters the jury had to decide. We are not persuaded Dr. McEvoy's stray statement that the District was "negligent" would have somehow confused the jury and distracted them from applying the correct "gross negligence" standard. We are confident the jury would have followed, as they are presumed to do, the trial court's charge on the law. They would have understood they could find the District liable on Seeger's negligent supervision claim only if Seeger proved gross negligence, as that is what the SCTCA requires to remove the District's immunity. *See* S.C. Code Ann. §15-78-60(25) (2005) (providing governmental entities are not liable for the failing in its duties or responsibilities of "supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner").

### ii. Admissibility of Expert Testimony – Rule 702

As an additional sustaining ground, the District contends Dr. McEvoy's testimony was properly excluded because it did not meet the floor for expert testimony set by Rule 702, SCRE. It is within our discretion to address any additional sustaining ground. *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000). A party seeking to present expert testimony must demonstrate, and the trial court acting as gatekeeper must find, that the evidence will assist the trier of fact, the expert is qualified, and the basis of the expert's opinion is reliable. *State v. Galloway*, 443 S.C. 229, 237, 904 S.E.2d 866, 870–71 (2024). The District claims Dr. McEvoy's testimony satisfies none of these three Rule 702 criteria.

Because we have already explained how this evidence was not cumulative—much less needlessly so—and would have assisted the jury, we will discuss this additional sustaining ground as it relates to the first of the three Rule 702 criteria. It does not take much to find expert testimony will assist the jury; it is enough if the purported testimony will help the jury's understanding to any degree. The District argues the jury did not need Dr. McEvoy to rehash what the District's policies were or tell them that K.S. had been bullied and the bullying had harmed him emotionally. All of these things, according to the District, were within the jury's ordinary knowledge, and Dr. McEvoy's testimony was therefore unnecessary. The test for admissibility is not whether the subject matter of the expert testimony is beyond the ordinary

knowledge of the jury; the test is whether the specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue. *See* 5 Michael H. Graham, *Handbook of Fed. Evid*. § 702.4 (9th ed. 2023 Update). Besides a reliable opinion, "[a]ll you need to be an expert witness is a body of specialized knowledge that can be helpful to a jury." *Williams*, 81 F.3d at 1441; 7 Wigmore, *Evidence* § 1923 at 31–32 (Chadbourn rev. 1978) ("The true test of the admissibility of such testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue."); *see also State v. Gibbs*, 438 S.C. 542, 555–56, 885 S.E.2d 378, 385 (2023) (Few, J., concurring) (explaining the difference between cases requiring expert testimony as an element of proof and Rule 702's admissibility threshold issue of whether expert's testimony "will assist the trier of fact").

As to the District's remaining Rule 702 arguments–that Dr. McEvoy was unqualified and his opinions were unreliable–the trial court never had the chance to rule on these issues. The record on these points is so undeveloped that we decline to address them as additional sustaining grounds. Because we are reversing the granting of directed verdict to the District, the District may renew these objections on remand.

### D. The Safe Schools Act and the Tort Claims Act

Seeger contends the Safe Schools Act repealed part of the Tort Claims Act and removed the requirement that he prove gross negligence to prevail on his negligent supervision claim.

Whether a statute creates a private right of action is a matter of legislative intent, so our first step is to look at language the legislature used in the statue. *Denson v. Nat'l Casualty Co.*, 439 S.C. 142, 150–52, 886 S.E.2d 228, 232–34 (2023). The Safe Schools Act addresses bullying in schools. It requires school districts to adopt anti-bullying policies and requires school employees and students to report bullying. But the Safe Schools Act provides no consequences if its terms are not followed. S.C. Code Ann. §§ 59-63-110 to -150 (2019). It permits victims to seek "redress pursuant to another available civil or criminal law" for violations of its terms. § 59-63-150(A). This same section provides, "This section does not create or alter tort liability." § 59-63-150(A). This language convinces us beyond all doubt that the Safe Schools Act does not create a private right of action. The Tort Claims Act makes the District liable for torts to the same extent as private individuals, subject to the exceptions the Tort Claims Act sets forth. S.C. Code Ann. § 15-78-20(b)

(2005); S.C. Code Ann. § 15-78-30(H) (2005); *Doe*, 375 S.C. at 70, 651 S.E.2d at 309 ("The [Tort Claims Act] addresses the circumstances under which a governmental entity is liable for tortious conduct of its employees."). One of these exceptions is that school districts are not liable for negligent supervision claims except upon proof of gross negligence. S.C. Code Ann. § 15-78-60(25) (2005). Because the Tort Claims Act affects tort liability, the Safe School Act, by its terms, does not alter or repeal the Tort Claims Act.

## IV. CONCLUSION

We reverse and vacate the decision of the court of appeals affirming the trial court's directed verdict in favor of the District as to Seeger's negligence claim. We also reverse the trial court's exclusion of Dr. McEvoy's expert testimony. We affirm, however, the grant of summary judgment to the District on Seeger's arguments regarding the Safe Schools Act. We therefore remand this case to the trial court for further proceedings consistent with this opinion.

**REVERSED IN PART, AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

**KITTREDGE, C.J., FEW, JAMES, JJ., and Acting Justice Donald W. Beatty, concur.**