Paul CROTEAU

v.

OLIN CORPORATION.

Civ. No. 86–402–D.

United States District Court,
D. New Hampshire.

Jan. 12, 1989.

B.J. Branch, Manchester, N.H., for plaintiff.

David J. Braiterman, Concord, N.H., Thomas M. Carney, St. Louis, Mo., for defendant.

## ORDER

DEVINE, Chief Judge.

In this diversity action, plaintiff Paul Croteau sues defendant Olin Corporation under theories of strict products liability and misrepresentation for injuries he sustained in a hunting accident. Plaintiff, who was carrying a Winchester Model 94.30 caliber rifle manufactured by Olin, was walking through the woods with his two cousins when he stumbled and fell. The allegedly defective rifle discharged, and the bullet hit one cousin in the left foot, continued on, and hit the other cousin in the right foot. Plaintiff was not hit by the bullet, but claims in this suit that he is suffering from "post-shooting stress syndrome", that he sustained emotional injury from witnessing the accident to his cousins, and that this emotional injury has manifested itself in physical symptoms, including severe head-

aches, an extremely elevated heart rate, chronic insomnia, and nightmares.

The matter is currently before the Court on cross-motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The burden is on the moving party to establish the lack of a genuine material factual issue. *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986). The Court must view the record in the light most favorable to the party opposing the motion, according it all beneficial inferences discernable from the evidence. *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir.1988).

The Court first addresses Olin's motion, in which it claims that judgment should be entered in its favor because plaintiff may not recover for emotional distress under theories of products liability and misrepresentation. Plaintiff objects to the motion, arguing that he suffered verifiable physical symptoms which constitute the requisite physical harm necessary to recover under these legal theories.

The New Hampshire Supreme Court has applied the Restatement (Second) of Torts ("Restatement") § 402A (1965) to strict products liability actions. *See Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978); *Buttrick v. Lessard*, 110 N.H. 36, 260 A.2d 111 (1969). That section provides:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for *physical harm* thereby caused to the ultimate user or consumer, or to his property, if

> (a) the seller is engaged in the business of selling such a product, and

> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement § 402A (emphasis added).

■ Thus, the first issue presented by defendant's motion is whether plaintiff's injuries constitute the "physical harm" required by the Restatement. Because the New Hampshire Supreme Court has not addressed the issue, this Court's task is to predict what New Hampshire courts would likely do in such a case. *Raymond v. Eli Lilly & Co.*, 412 F.Supp. 1392, 1397 (D.N. H.1976), *aff'd* 556 F.2d 628 (1st Cir.1977).

Although some courts have found that a plaintiff may recover for physical harm resulting from emotional disturbance in a products liability action,[1] the New Hampshire Supreme Court has been extremely reluctant to expand the doctrine of strict products liability beyond traditional bounds. *See Simoneau v. South Bend Lathe, Inc.*, 130 N.H. 466, 469, 543 A.2d 407, 409 (1988) (rejecting product-line theory of recovery); *Siciliano v. Capitol City Shows, Inc.*, 124 N.H. 719, 730, 475 A.2d 19, 25 (1984) (strict liability not applicable to supplier of services); *Bolduc v. Herbert Schneider Corp.*, 117 N.H. 566, 570, 374 A.2d 1187, 1190 (1977). Thus, this Court believes that the New Hampshire Supreme Court would be unlikely to expand the definition of physical harm to include claims of physical injury caused by emotional distress.

■ Moreover, even if plaintiff's injuries constitute the physical harm necessary to support recovery under § 402A, plaintiff must still prove his injuries were "foreseeable".[2] As a bystander to his cousins' inju-

---

1. *See, e.g., Walters v. Mintec/Int'l*, 758 F.2d 73 (3d Cir.1985) (applying Virgin Islands law); *Walker v. Clark Equip. Co.*, 320 N.W.2d 561 (Iowa 1982); *Shepard v. Superior Court of Alameda County*, 76 Cal.App.3d 16, 142 Cal.Rptr. 612 (1977); *see also* Annotation, Bystander Recovery for Emotional Distress at Witnessing Another's Injury Under Strict Products Liability or Breach of Warranty, 31 A.L.R. 4th 162 (1984).

2. Those courts which have allowed recovery for emotional distress in strict liability actions have uniformly done so only if the plaintiff falls within the narrow group of plaintiffs who could recover for negligent infliction of emotional distress. *See, e.g., Walters, supra*, 758 F.2d at 78; *Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 450 N.E.2d 581, 588 (1983); *Walker, supra*, 320 N.W.2d at 563; *Shepard, supra*, 142 Cal.

ries, plaintiff must satisfy the following three factors to establish that his injuries were foreseeable:

'(1) Whether plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it.

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident from others after its occurrence.

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence from relationship or the presence of only a distant relationship.'

*Corso, supra,* 119 N.H. at 653–54, 406 A.2d at 304 (quoting *Dillon, supra,* 68 Cal.2d at 740–41, 69 Cal.Rptr. at 80, 441 P.2d at 920).

In this case, the Court finds that plaintiff cannot satisfy factor number (3) as a matter of law because the relationship of first cousins is not sufficiently close to allow recovery. The Supreme Court has never extended recovery for emotional distress beyond close family members who may be considered "loved ones". *See, e.g., Corso, supra,* 119 N.H. at 659, 406 A.2d at 308 (parents); *Waid v. Ford Motor Company,* 125 N.H. 640, 641, 484 A.2d 1152, 1154 (1984) (spouses). That court has reasoned that "it is reasonably foreseeable that if [one's negligent actions cause injury] there will be one or more persons sufficiently attached emotionally to the injured person that he or they will be affected." *Corso, supra,* 119 N.H. at 652, 406 A.2d at 303–04.

Other jurisdictions which have adopted the *Dillon v. Legg* factors have also limited recovery to those with close familial relationships. *See, e.g., Pearsall v. Emhart Ind.,* 599 F.Supp. 207, 211–12 (E.D.Pa.1984) (parent/child and spouse); *Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433, 438 (Me.1982) (parent/child); *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521 (1980)

(parent/child); *Walker, supra,* 320 N.W.2d at 561 (brother). A New Jersey court, in allowing recovery by a mother who witnessed her son's death caused by a negligently maintained elevator, made the following insightful observations about the third *Dillon* factor:

The final criterion, that the plaintiff be 'closely related' to the injured person, also embodies the judgment that only the most profound emotional interests should receive vindication for their negligent injury.... The existence of the close relationship is most crucial. It is the presence of deep, intimate, familial ties between the plaintiff and the physically injured person that makes the harm to emotional tranquility so serious and compelling. The genuine suffering which flows from such harm stands in stark contrast to the setbacks and sorrows of everyday life, or even to the apprehension of harm to another, less intimate person. The existence of a marital or intimate familial relationship is therefore an essential element of a cause of action for negligent infliction of emotional distress.

*Portee, supra,* 417 A.2d at 526–27.

A California court applying the *Dillon* criteria in a case similar to the instant case held that first cousins could not recover for negligent infliction of emotional distress as a matter of law. *See Trapp v. Schuyler Const.,* 149 Cal.App.3d 1140, 197 Cal.Rptr. 411 (1983). In *Trapp,* two children under fourteen years of age witnessed their first cousin drown in a swimming pool that was allegedly negligently maintained. Plaintiffs alleged that the cousins "played together often and had a relationship analagous [sic] to a relationship between siblings. Plaintffs [sic] loved [their cousin] as they would their own brother." *Id.* The court found no reason to extend the reasonable foreseeability analysis to in-

---

Rptr. at 614; *see also* W. Keeton, Prosser and Keeton on Torts ("Prosser") § 79, at 560 (5th ed. 1984) (discussing limits on proximate causation in strict liability actions). The New Hampshire Supreme Court applies the "foreseeability" analysis set forth in the landmark case of *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d

912 (1968), to determine the extent of liability in negligent infliction of emotional distress cases. *See Corso v. Merrill,* 119 N.H. 647, 406 A.2d 300 (1979). Therefore, plaintiff must establish that his injuries are foreseeable under *Corso* to maintain his strict products liability action.

clude first cousins, "family members well beyond the 'immediate' family unit of parents and children." *Id.*, 197 Cal.Rptr. at 412.

Although plaintiff herein asserts that testimony will show that he was close to his cousins, the Court does not believe that the New Hampshire Supreme Court would allow the determination of the extent of the relationship to go to a jury because the relationship of first cousins does not meet the level of intimacy required by the *Dillon* foreseeability analysis. Accordingly, the Court finds as a matter of law that plaintiff may not recover for the injuries he sustained by witnessing his cousins' injuries.

■ Plaintiff also argues that he should be allowed to recover, not as a bystander to his cousins' injuries, but for the injury he sustained as a result of the fright he suffered from being a potential victim of the bullet. Plaintiff relies on *Walters v. Mintec/Int'l, supra*, 758 F.2d 73, in which the Third Circuit Court of Appeals allowed a plaintiff in a strict products liability action who narrowly escaped a potentially fatal injury caused by a defective product to recover for emotionally based physical harm because he had established legal causation under section 436 of the Restatement. That section provides:

> If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

Restatement § 436(2).

Although the New Hampshire Supreme Court has not yet adopted this section of the Restatement, it has allowed recovery in negligence actions for injuries caused by fright. *See, e.g., Chiuchiolo v. New England, etc., Tailors*, 84 N.H. 329, 150 A. 540 (1930). However, the Supreme Court has specifically limited recovery to "a plaintiff who reasonably apprehended injury from an instrumentality in the defendant's con-

trol." *Barber v. Pollock*, 104 N.H. 379, 380, 187 A.2d 788, 789 (1963). This limitation on potential liability has also been adopted by courts applying section 436 of the Restatement. *See, e.g., Dobelle v. Nat'l R.R. Passenger Corp.*, 628 F.Supp. 1518, 1525 (S.D.N.Y.1986) (plaintiff who saw steel rail come toward him through the bottom of a railroad passenger car was allowed to recover for emotional injury because he was in personal danger of physical impact and actually feared such bodily harm).

In the instant case, plaintiff has not alleged that he apprehended any injury to himself from the defective rifle. Instead, he alleges he suffers from "post-shooting stress syndrome" and argues he should be allowed to recover because he *could have been* shot had the rifle been aimed toward him when it discharged. To allow plaintiff to recover on this basis would potentially allow any bystander to recover who is later traumatized by the knowledge that he could have been injured by a defective product. Such an expansive theory of recovery would not be consonant with the New Hampshire Supreme Court's expressed desire to limit the doctrine of strict products liability. Accordingly, the Court finds that New Hampshire courts would not allow plaintiff's claim as a matter of law. Defendant's motion for summary judgment on the strict liability count must therefore be granted.

■ Plaintiff raises two additional claims for intentional and negligent misrepresentation. Plaintiff claims that Olin represented that the rifle it sold him would not discharge when the safety was on, that Olin knew the rifle could discharge, and that plaintiff suffered damages in observing his cousins' injuries as a consequence of this misrepresentation.

To recover under a theory of misrepresentation, plaintiff must support his claim by proving special or consequential damages. *See Crowley v. Global Realty*, 124 N.H. 814, 474 A.2d 1056 (1984). As in any tort action, the consequential damages must have been proximately caused by the fraudulent conduct. "In general, and with

only a few exceptions, the courts have restricted recovery to those losses which might be expected to follow from the fraud and from events that are reasonably foreseeable.... It is only where the fact misstated was of a nature calculated to bring about such a result that damages for it can be recovered." *Prosser* § 110, at 767.

For reasons set forth above, the Court finds that as a matter of law it was not foreseeable that plaintiff would suffer mental distress as a result of witnessing his cousins' injuries by the defective rifle. The New Hampshire Supreme Court would not find that cousins have a relationship with the level of intimacy required to recover these types of damages. Accordingly, defendant's motion for summary judgment must be and herewith is granted as to plaintiff's claims of intentional and negligent misrepresentation.

In sum, for reasons set forth above, defendant's motion for summary judgment on all three counts of plaintiff's complaint must be and herewith is granted. Because judgment is entered in defendant's favor, the Court need not address plaintiff's cross-motions for summary judgment.

SO ORDERED.