1999 UT 102

Tenne STRAUB f.k.a. Tenne Vanderwood, Plaintiff and Appellant,

v.

FISHER AND PAYKEL HEALTH CARE, a corporation, Defendant and Appellee.

No. 980081.

Supreme Court of Utah.

Nov. 2, 1999.

---

Thomas R. Blonquist, Salt Lake City, for plaintiff Karra J. Porter.

William J. Hansen, Salt Lake City, for defendant.

STEWART, Justice:

¶ 1 Plaintiff Tenne Straub brought suit against defendant Fisher and Paykel Health Care claiming negligence, strict liability, and breach of warranty. On defendant's motion for summary judgment, the trial court ruled against plaintiff on all claims. Plaintiff appeals.

## I.  FACTS

¶ 2 Straub is a licensed respiratory therapist who was employed at McKay Dee hospital in Ogden, Utah. In December of 1993, during the course of her employment, she provided treatment for Emma Padilla Boney. Straub administered an open or "blow by" respiratory system, using a ventilator that generated and regulated the flow of oxygen that Mrs. Boney inhaled. Mrs. Boney exhaled on her own power. In a "blow by" system, an oxygen/air mixture is delivered to the patient through a long, flexible delivery tube, one end of which is attached to the ventilator. As the delivery tube reaches the patient, it is connected to one prong of a "Y" attachment, through which the oxygen/air mixture is delivered directly to the patient. The other prong of the "Y" attachment provides an opening enabling the patient to exhale.

¶ 3 Defendant Fisher and Paykel manufactured a humidifier that warmed and humidified the oxygen/air mixture delivered to Mrs. Boney. The humidifier consisted of a small plastic chamber that rested on top of a heating unit. The oxygen/air mixture supplied by the ventilator was delivered to the humidifier through a tube connected to an opening in the plastic chamber where the mixture was warmed and humidified. It then exited the chamber through another tube that delivered the warmed mixture to the patient through the "Y" attachment. The humidifier did not change the pressure or rate of flow of the oxygen/air mixture. Fisher and Paykel manufactured only the humidifier, and did not manufacture, distribute, or sell the ventilator, the delivery tubes, or the "Y" attachment.

¶ 4 On December 15, 1993, Straub disconnected the delivery tube from the hospital ventilator and connected it to a portable oxygen source so that Mrs. Boney could move around the room. Mrs. Boney experienced difficulty breathing and began to gurgle from lung secretions. To suction Mrs. Boney's secretions, Straub disconnected the delivery tube from the portable oxygen source and reconnected it to the humidifier and hospital ventilator, but failed to install the "Y" attachment, without which Mrs. Boney could not exhale. As a result, Mrs. Boney suffered barotrauma, respiratory and cardiac arrest, and died. Straub claims that as a result of witnessing Mrs. Boney's death, she suffered severe emotional distress that caused termination of her employment, dissolution of her marriage, and her incarceration after attempting to shoot her husband.

¶ 5 Straub sued Fisher and Paykel, on the ground that the humidifier was defective. Straub alleged claims based on negligence, breach of implied warranty, and strict liability. The district court granted Fisher and Paykel's motion for summary judgment. On the strict liability and breach of warranty claims, the court ruled that Straub had not suffered physical harm, and was not an ultimate user of the product alleged to be defective, as required by section 402A of the Restatement (Second) of Torts. On the negligence claim, the court ruled that Straub was never in the "zone of danger," and therefore failed to state a claim for negligent infliction of emotional distress.

¶ 6 Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Utah R. Civ. P. 56(c). *See Fishbaugh v. Utah Power & Light,* 969 P.2d 403, 405 (Utah 1998). We may affirm a summary judgment on any ground available to the trial court, even if not relied on below. *See Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993). We review for correctness. *See Walker Drug Co. v. La Sal Oil Co.,* 972 P.2d 1238 (Utah 1998).

## II.  PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

¶ 7 This case presents the question of whether a plaintiff can allege a claim for

negligent infliction of emotional distress based on her witnessing an injury to a third person. Here the plaintiff operated the instrumentality that caused injury to the third person but was not personally threatened with physical injury. Straub argues Fisher and Paykel negligently failed to include a pressure release valve in the plastic chamber of its humidifier, which would allow patients to exhale even if the "Y" attachment were not connected to the delivery tube. She contends this was a design defect that proximately caused the emotional distress she suffered from watching Mrs. Boney suffocate and die. Fisher and Paykel argues that Straub cannot prevail on this claim because she was never in danger of physical injury.

¶8 This Court first recognized a cause of action for negligent infliction of emotional distress in *Johnson v. Rogers,* 763 P.2d 771, 785 (Utah 1988). In *Johnson,* a father and son were waiting at an intersection when a drunk driver negligently jumped the curb, killing the son and injuring the father. The Court allowed the father to maintain a cause of action for negligent infliction of emotional distress. In so doing, it adopted the zone of danger test from section 313 of the Restatement (Second) of Torts (1965). The Restatement provides that when an actor unintentionally causes emotional distress to another, the actor is subject to liability when the actor "should have realized that his conduct involved an unreasonable risk of causing the distress," and that the distress "might result in illness or bodily harm." *Id.* § 313(1). Section 313(2) provides, however, that there shall be no recovery where emotional distress arises "solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other." In other words, unless the plaintiff herself has been placed in actual physical peril, she may not recover for negligent infliction of emotional distress suffered while witnessing injury to a third party.

¶9 In *Hansen v. Sea Ray Boats, Inc.,* 830 P.2d 236 (Utah 1992), we framed the zone of danger analysis as a distinction between direct victims, those who are in actual physical peril, and bystanders, those who may witness or be affected by the actions, but who themselves suffer no actual physical peril. In *Hansen,* we refused to extend recovery for emotional distress outside the zone of danger created by a defendant's negligence, even though the plaintiff reasonably believed she was in danger of injury. While on a boating outing, the plaintiff in *Hansen* witnessed several people near the boat receive electrical shock, including her son. *See id.* at 238. Although the plaintiff was never actually in danger of harm, "she experienced a general 'global' kind of fear" for her own safety. *Id.* We held that a plaintiff who reasonably believes that she is threatened with bodily harm cannot bring a claim for negligent infliction of emotional distress if the threat of bodily harm is not real in fact. *See id.* at 243.

¶10 Even if Straub could show that Fisher and Paykel's negligence caused Mrs. Boney's death, Straub's claim fails as a matter of law because she was never personally at risk of physical injury when she witnessed the death of her patient. Straub argues that she should nonetheless recover for her emotional distress on the basis that she was not a mere bystander but a direct victim of Fisher and Paykel's negligence. She claims that because she operated the allegedly defective humidifier that caused Mrs. Boney's death, it was reasonably foreseeable that she would suffer emotional distress when the humidifier caused injury to someone under her care. Straub relies on the following cases from other jurisdictions to support her view that a user or operator of a defective product causing injury to another has a negligence claim for emotional distress suffered after witnessing the injury: *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968); *Shepard v. Superior Court,* 76 Cal.App.3d 16, 142 Cal.Rptr. 612 (1977); *Walker v. Clark Equip. Co.,* 320 N.W.2d 561 (Iowa 1982); *Molien v. Kaiser Found. Hosps.,* 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980); *Kately v. Wilkinson,* 148 Cal.App.3d 576, 195 Cal.Rptr. 902 (1983).

¶11 These cases are unpersuasive. *Dillon* expanded the zone of danger analysis to allow a bystander who witnesses injury negligently caused to another to recover for emo-

tional distress if three conditions are present: (1) the plaintiff is located near the scene of the accident; (2) the emotional shock results from "the sensory and contemporaneous observance of the accident"; and (3) the plaintiff and victim are closely related. *See Dillon,* 69 Cal.Rptr. 72, 441 P.2d at 920–21. *Shepard* and *Walker* apply the *Dillon* rule. *See Shepard,* 142 Cal.Rptr. at 614; *Walker,* 320 N.W.2d at 562–63. This Court, however, specifically rejected *Dillon* as having an "artificial and unworkable" analytical framework based on the "fortuitous circumstances" of the incident and a breach of duty to someone other than the plaintiff. *Hansen,* 830 P.2d at 242. We concluded that vicarious recovery by a *Dillon* bystander is "too attenuated from the principle of duty to allow for reasonable limitations on recovery." *Id. Hansen* precludes Straub from relying on *Dillon* and its progeny to support her argument that she is entitled to recover for her emotional distress even though Fisher and Paykel's negligence did not place her at risk of injury.

¶ 12   Straub relies on *Molien* and *Kately* to argue that she is not a mere bystander to whom Restatement section 313(2) should apply. Straub argues instead that, in having operated the allegedly defective instrumentality that caused Mrs. Boney's suffering and death, she was a direct victim to whom Fisher and Paykel is liable. A brief description of the facts in *Molien* and *Kately* is helpful to understand Straub's theory. In *Molien,* the California Supreme Court recognized the negligence claim of a plaintiff who suffered emotional distress upon learning that doctors diagnosed his wife with syphilis. *See Molien,* 167 Cal.Rptr. 831, 616 P.2d at 816–17. The court first suggested that application of *Dillon* would preclude recovery because the plaintiff was not present when the doctors announced the diagnosis which later proved erroneous; however, the court concluded that *Molien* was "a case factually dissimilar to the bystander scenario." *Id.* The court distinguished between a bystander, who suffers emotional trauma as a mere witness to injury of a third person, and a "direct victim" of a negligent act, who a defendant should reasonably foresee will suffer emotional distress as a result of the defendant's negligent

conduct. *See id.* at 816, 167 Cal.Rptr. 831. The court concluded the plaintiff was a direct victim because the defendant doctors should have foreseen that negligent diagnosis of a sexually transmitted disease would cause severe emotional distress to the patient's spouse. The doctors' tortious conduct was therefore directed towards the plaintiff as well as his wife. *See id.* at 817, 167 Cal.Rptr. 831.

¶ 13   In *Kately,* the California Court of Appeals relied on *Molien* to hold that a plaintiff stated a cause of action against a boat manufacturer for the emotional distress she suffered when the boat she operated malfunctioned, causing the injury and death of a friend waterskiing behind the boat. *See Kately,* 195 Cal.Rptr. at 909. Application of *Dillon* would have precluded recovery because the plaintiff was not closely related to the water skier. *See id.* at 907. However, even though the plaintiff suffered emotional distress by witnessing an injury of another, the court concluded that the plaintiff was a direct victim to whom the defendant might be liable because the defendant should have foreseen that operators of its defective boats would feel responsible for injuries to skiers they towed and that this sense of guilt would cause severe emotional distress. *See id.* at 909.

¶ 14   These cases, however, are not compatible with our decisions in *Johnson* and *Hansen.* Under this Court's zone of danger analysis it makes no difference that Straub suffered emotional distress either as the operator of the allegedly defective equipment causing the death of Mrs. Boney, or as an uninvolved observer of Mrs. Boney's death. A plaintiff cannot recover for negligent infliction of emotional distress unless the plaintiff is a direct victim of the defendant's negligence. This rule applies regardless of whether the plaintiff's emotional distress resulted from fear for her own safety or from witnessing harm to another. That is, Fisher and Paykel's negligence must have placed Straub in actual physical peril for her to recover for negligent infliction of emotional distress.

¶ 15 In a case such as this, a manufacturer of medical devices may be able to foresee harm to patients and medical personnel who are placed at risk of harm or peril by devices negligently manufactured. However, the manufacturer cannot reasonably foresee the extent to which persons who operate or administer these devices will suffer emotional distress upon witnessing injury to patients when they are not themselves placed at risk of injury. The manufacturer's potential liability for emotional distress extends only to direct victims, not bystanders. Finally, the rule ensures that a plaintiff sues only "in his own right for a wrong personal to him, and not as the vicarious beneficiary of a breach of duty to another." *Id.* at 241 (internal quotes omitted). In sum, we decline to extend recovery to Straub, who was outside the zone of danger, and refuse to require Fisher and Paykel to compensate Straub for emotional distress arising from a situation in which Fisher and Paykel did not breach a duty of care owed to Straub. *See id.* at 241.

## III. THE STRICT LIABILITY CLAIM

¶ 16 Straub also asserts a claim for relief for emotional distress under a theory of strict products liability.[1] Straub argues that Fisher and Paykel's humidifier was unreasonably dangerous because Fisher and Paykel failed to design the humidifier with a pressure release valve and failed to warn of its dangerousness without such a valve. The question of when, if ever, a plaintiff may sue under a theory of strict liability for emotional distress suffered while witnessing injury to a third party is considered by this Court for the first time.

¶ 17 The law of strict products liability was first applied by this Court in *Ernest W. Hahn, Inc. v. Armco Steel Co.,* 601 P.2d 152, 158 (Utah 1979). In *Hahn,* we adopted Restatement (Second) of Torts § 402A (1965), which provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property," provided the seller is engaged in the business of selling the product and the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. *Id.* § 402A

¶ 18 A number of cases have allowed plaintiffs who were not "ultimate users and consumers" to sue in strict products liability under certain circumstances. Strict liability claims have been allowed for bystanders who are directly injured by unreasonably dangerous products they neither use nor consume. A typical example is a pedestrian who is struck by an automobile with defective steering. *See, e.g., West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla.1976) (strict liability claim for woman struck by heavy construction equipment); *Haumersen v. Ford Motor Co.,* 257 N.W.2d 7 (Iowa 1977) (strict liability claim for child in school yard struck by defective car); *see also Williams v. National Trailer Convoy, Inc.,* 549 F.Supp. 305 (D.Colo.1982) (strict liability claim for plaintiff injured when car he drove was struck by defective mobile home trailer); *Chrysler Corp. v. Alumbaugh,* 168 Ind.App. 363, 342 N.E.2d 908, *modified by* 168 Ind.App. 363, 348 N.E.2d 654 (1976) (strict liability claim for plaintiff in car accident caused by defective car); *Embs v. Pepsi–Cola Bottling Co.,* 528 S.W.2d 703 (Ky.1975) (strict liability claim for bystander injured by exploding soda bottle); *Kelley v. R.G. Indus., Inc.,* 304 Md. 124, 497 A.2d 1143 (1985) (strict liability claim against gun manufacturer by victim of shooting); *Giberson v. Ford Motor Co.,* 504 S.W.2d 8 (Mo.1974) (strict liability claim for occupants of auto struck by allegedly defective car); *Lamendola v. Mizell,* 115 N.J.Super. 514, 280 A.2d 241 (Law Div.1971); *Howes v. Hansen,* 56 Wis.2d 247, 201 N.W.2d 825 (1972) (strict liability claim for child

---

1. Straub provides no analysis for her breach of implied warranty claim. We can only assume that she is not appealing this issue. In any event, the elements of strict liability and breach of warranty "are essentially the same." *Ernest W. Hahn, Inc. v. Armco Steel Co.,* 601 P.2d 152, 159 (Utah 1979) (citing William L. Prosser, *The Assault Upon the Citadel,* 69 Yale L.J. 1099 (1960); David G. Epstein, *Products Liability: Defenses Based on Plaintiff's Conduct,* 1968 Utah L.Rev. 267; *see also Salt Lake City Corp. v. Kasler Corp.,* 855 F.Supp. 1560, 1572 (D.Utah 1994) (citing Utah cases).

whose foot was amputated by allegedly defective lawn mower).

¶ 19   Manufacturers and sellers are strictly liable to bystanders for the usual, foreseeable consequences of the risks presented by the defects in their products. *See, e.g., Madsen v. East Jordan Irr. Co.,* 101 Utah 552, 125 P.2d 794 (1942) (holding that, in ordinary strict liability, "results chargeable to the nonnegligent user of explosives are those things ordinarily resulting from an explosion"); W. Page Keeton et al., *Prosser & Keeton on Torts* § 79, at 560 (5th ed.1984) (noting that recovery under ordinary strict liability depends, in part, on whether injury plaintiff suffers is a normal consequence lying within the "extraordinary risk whose existence calls for such special responsibility").

¶ 20   Most courts that have extended strict products liability to injuries suffered by bystanders have done so, in part, on the basis that the bystanders' injuries were the foreseeable results of the alleged defects. *See Sills v. Massey–Ferguson, Inc.,* 296 F.Supp. 776 (N.D.Ind.1969) (holding that zone of strict liability is commensurate with zone of foreseeable risk); *Elmore v. American Motors Corp.,* 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84 (1969); *Mitchell v. Miller,* 26 Conn.Supp. 142, 214 A.2d 694, 698 (1965) (noting that test of foreseeability or reasonable anticipation of injury from defect is becoming test of whether strict liability should be allowed in favor of particular plaintiffs); *Winnett v. Winnett,* 57 Ill.2d 7, 310 N.E.2d 1 (1974) (holding manufacturer of farm equipment could not reasonably foresee that four-year-old victim would be allowed to approach equipment when in operation); *Embs v. Pepsi–Cola Bottling Co.,* 528 S.W.2d 703 (Ky. 1975); *Pegg v. General Motors Corp.,* 258 Pa.Super. 59, 391 A.2d 1074 (1978); *Davis v. Gibson Prods. Co.,* 505 S.W.2d 682 (Tex.Civ. App.1973).

¶ 21   Straub's strict liability claim is, however, distinguishable from those cases in which a bystander suffers direct injury by a defective product. First, Straub's injury arose solely from her observation of injury to a third person. Second, Straub's injuries are limited to the effects of severe emotional distress. Straub claims no physical injury as a result of Fisher and Paykel's allegedly defective humidifier.

¶ 22   In support of her position, Straub cites cases from other jurisdictions allowing recovery under strict liability for emotional distress suffered while witnessing injury to a third party: *Shepard v. Superior Court,* 76 Cal.App.3d 16, 142 Cal.Rptr. 612 (1977); *Walker v. Clark Equip.,* 320 N.W.2d 561 (Iowa 1982); *Gnirk v. Ford Motor Co.,* 572 F.Supp. 1201 (D.S.D.1983).

¶ 23   *Shepard* is a California case in which the *Dillon* rule (discussed above) was extended from negligent infliction of emotional distress to include strict liability. In *Walker,* relied on heavily in Straub's brief, the Iowa Supreme Court also noted that it had previously adopted the *Dillon* rule, and was now simply expanding that to include strict liability. As discussed above, however, this Court has rejected the *Dillon* rule in the negligence context as providing an "artificial and unworkable" analytical framework. *Hansen,* 830 P.2d at 242. As our holding in *Hansen* was premised on notions of foreseeability, *see id.* at 241, we find it applicable to strict liability as well. Accordingly, as we rejected the *Dillon* rule in the negligence context in *Hansen,* we find it equally unconvincing in a claim for strict liability.

¶ 24   Plaintiff relies on *Gnirk* to argue that she is a user of the defective equipment, rather than a bystander. In *Gnirk,* the plaintiff, Wilma Gnirk, exited the car she drove to open a gate, leaving her child buckled inside. While outside, Gnirk watched as the car's malfunctioning gears caused the car to roll backwards, strike a post, and roll into a stock dam where her child drowned. As a result of the accident, Gnirk suffered severe emotional distress. *See* 572 F.Supp. at 1202. Although her injuries stemmed from observation of injury to a third person, in this case the plaintiff's child, the court concluded that Gnirk was not a mere bystander but a user of the defective car to whom the manufacturer owed an independent legal duty and allowed her to recover in strict liability. *See id.* at 1203.

¶ 25   Without suggesting whether we would recognize a claim for strict liability

under the facts in *Gnirk*, that case is distinguishable. In reaching its decision, the court in *Gnirk* emphasized the relationship between Ford and the plaintiff and concluded the plaintiff was owed a duty of care. In *Gnirk*, the plaintiff was the owner of the car, driver, mother of the victim, and herself a potential physical victim of the malfunctioning gears. The foreseeability of the injury in *Gnirk* was decidedly greater than in the instant case.

¶ 26   In sum, Fisher and Paykel could not reasonably have anticipated that a trained therapist might misuse other components attached to, but not a part of, its humidifier, and that injury or death to the patient would ensue, causing severe emotional distress to the therapist. It was reasonable for Fisher and Paykel to assume that a therapist such as Straub, properly licensed and trained, would recognize the necessity of connecting the patient to the hospital's ventilator only after she has attached the "Y" segment to the end of the delivery tube.

¶ 27   Affirmed.

¶ 28 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice ZIMMERMAN, and Justice RUSSON concur in Justice STEWART'S opinion.

