553 S.E.2d 477

**Marilyn BRAY and Allan Bray, Appellants,**

**v.**

**MARATHON CORPORATION, and Alabama Corporation; American Refuse Systems, Inc., a North Carolina Corporation; John Doe and Richard Doe, Defendants,**

**of whom Marathon Corporation, and Alabama Corporation; and American Refuse Systems, Inc., a North Carolina Corporation; are, Respondents.**

**No. 3386.**

Court of Appeals of South Carolina.

Heard April 4, 2001.

Decided Sept. 10, 2001.

Rehearing Denied Oct. 17, 2001.

190

Ray P. McClain, of Charleston; and Ronald J. Jebaily, of Jebaily & Glass, of Florence, for appellants.

Gray T. Culbreath and Ellen M. Adams, both of Collins & Lacy, of Columbia; and Saunders M. Bridges, of Bridges, Orr & Ervin, of Florence, for respondents.

HOWARD, J.:

Marilyn Bray brought this products liability action against Marathon Corporation ("Marathon"), the manufacturer of a trash compactor, and American Refuse Systems, Inc. ("ARS"), the lessor of the compactor, alleging claims of negligence, breach of warranty, and strict liability.[1] Bray seeks recovery as the user of the compactor for emotionally induced injuries she sustained as a result of witnessing the compactor crush her co-worker to death. Applying the negligence "bystander" requirements adopted by our supreme court in *Kinard v. Augusta Sash and Door Co.*, 286 S.C. 579, 336 S.E.2d 465 (1985), to all causes of action, the trial court granted summary judgment to Marathon and ARS because Bray did not have a close relationship with her co-worker. We conclude the *Kinard* bystander analysis is inapplicable to Bray's strict liability cause of action. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

The facts, viewed in a light most favorable to Bray, are as follows. Baron Blackmon was a maintenance mechanic at General Electric's manufacturing plant located in Florence, South Carolina. Bray and Blackmon had been co-workers for approximately fifteen years. On March 5, 1994, Blackmon

---

1. Allan Bray joined a claim for loss of consortium. His claim is dependent upon the viability of his wife's claim. For clarity, we refer throughout this opinion only to Marilyn Bray or "Bray," although the rulings also apply to the consortium claim of Allan Bray.

was inside the "charge box" of a Ram–Jet Trash Compactor manufactured by Marathon and leased to General Electric by ARS. When Bray approached it to discard a bag of trash, Blackmon asked Bray to start the trash compactor. Bray declined, until Blackmon assured her it was safe to do so. Bray pressed the "start" button, causing the ram to move toward Blackmon instead of away from him. Blackmon called to Bray to reverse the compactor. Bray turned the manual override switch to "reverse," but the ram continued moving toward Blackmon. Bray attempted to stop the compactor, but the ram would remain stopped only as long as she maintained continuous pressure on the "stop" button. Blackmon was pinned inside the compactor, so Bray released the button and ran for help. Upon her return, she found Blackmon blue and unconscious. The ram had crushed him to death.

Bray filed this action against Marathon and ARS for breach of implied and express warranty, strict liability, and negligence, alleging she suffered serious and permanent physical injuries caused by the emotional trauma of witnessing Blackmon's death.[2]

Marathon and ARS moved for summary judgment, arguing Bray failed to state a cause of action because her claim did not meet the bystander requirements adopted by our supreme court in *Kinard.* The court granted summary judgment to Marathon and ARS, concluding Bray was a "bystander" to Blackmon's death and could not recover for her injuries because she was not closely related to him. *See Kinard,* 286 S.C. at 582–83, 336 S.E.2d at 467.

Bray moved for reconsideration pursuant to Rule 59, SCRCP, arguing her claim was not a "bystander" cause of action. The court denied the motion, and Bray appeals.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

2. Although the trial court granted summary judgment to Marathon and ARS on all causes of action, Bray makes no argument as to the propriety of the ruling on the warranty claims. We, therefore, deem those issues abandoned. *See Solomon v. City Realty Co.,* 262 S.C. 198, 201, 203 S.E.2d 435, 436 (1974); *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 298, 519 S.E.2d 583, 600 (Ct.App.1999).

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party. *Worsley Cos. v. Town of Mt. Pleasant,* 339 S.C. 51, 55, 528 S.E.2d 657, 659 (2000). If triable issues exist, they must be submitted to the jury. *Id.* at 55, 528 S.E.2d at 660.

"The plain language of Rule 56(c), SCRCP, mandates the entry of summary judgment, after adequate time for discovery against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Carolina Alliance for Fair Employment v. S.C. Dep't of Labor, Licensing, & Regulation,* 337 S.C. 476, 485, 523 S.E.2d 795, 800 (Ct.App.1999). "In such a situation, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts imma-terial." *Baughman v. American Tel. & Tel. Co.,* 306 S.C. 101, 116, 410 S.E.2d 537, 546 (1991).

On appeal, this Court reviews the grant of summary judg-ment using the same standard applied by the trial court. *Id.* at 114, 410 S.E.2d at 545.

## DISCUSSION

### I. Negligence

Bray asserts two theories of recovery based upon negli-gence. She asserts a claim for negligence under a line of cases allowing recovery for injury as a result of mental and emotional trauma in the absence of physical impact and an action for negligent infliction of emotional distress under *Kinard.*

### A. Cause of Action under *Padgett*

First, Bray argues her claims are supported by *Padgett v. Colonial Wholesale Distributing Co.,* 232 S.C. 593, 103 S.E.2d 265 (1958), and other South Carolina cases allowing recovery

for injury as a result of mental and emotional damages in the absence of physical impact. *See Spaugh v. Atl. Coast Line R.R. Co.*, 158 S.C. 25, 155 S.E. 145 (1930); *Mack v. South–Bound R.R. Co.*, 52 S.C. 323, 29 S.E. 905 (1898). We find *Padgett* inapplicable to support a cause of action in the current circumstances.

*Padgett* was not a products liability case. The plaintiff in *Padgett* was inside his house when he heard a "terrible noise and there was a jarring of the residence." 232 S.C. at 597, 103 S.E.2d at 266. The plaintiff opened his door and discovered a wholesale liquor truck had collided with his house. He remained outside after the accident for about two hours talking to officers at the scene and picking up debris. The next morning he was ill and later suffered from skin problems and nervousness. Relying upon previous cases, our supreme court ruled that the trial judge was correct in submitting to the jury the question of whether or not the plaintiff had sustained physical or bodily injury as a consequence of the shock, fright, and emotional upset he had experienced. *Id.* at 607–608, 103 S.E.2d at 272.

Bray asserts that *Padgett* is applicable in this instance. However, we note that unlike Bray, Padgett was a direct victim. He was in his house when it was jarred by the truck and he suffered physical damage to his property. His shock and distress did not result from witnessing an injury to another person but, presumably, from fear of harm to himself. Under Bray's version of the facts, she was never in harm's way. The negligence of Marathon and/or ARS, if any, did not operate directly against Bray, as it did against the plaintiff in *Padgett.* We do agree with Bray in her assertion that damages may be recovered in South Carolina for bodily injuries suffered as a result of emotional and mental distress caused by a defendant's negligence in the absence of any physical impact. *Kinard* allows such an action in the absence of physical impact and without the requirement that the plaintiff be in the zone of danger. 286 S.C. at 582, 336 S.E.2d at 467.

Although we find that the *Padgett* line of cases is not applicable as a cause of action, the cases are helpful in understanding whether Bray's injuries are compensable as

"physical harm" under a strict liability analysis as discussed later in this opinion.

## B. Bystander Cause of Action under *Kinard*

■ Upon establishing that plaintiffs could recover for physical injury resulting from emotional trauma in the absence of physical impact, a problem arose concerning who could recover for these injuries. Physical harm directly resulting from physical impact is limited to the person or persons sustaining the physical impact. However, physical harm resulting from emotional trauma at witnessing some event could be experienced by all those who have perceived the traumatic event through their senses. These people have generally been described as bystanders.

■ Our supreme court recognized a cause of action for negligent infliction of emotional distress in a bystander setting in *Kinard.* 286 S.C. at 579, 336 S.E.2d at 465. In *Kinard,* a child was severely injured while riding in a car with her mother. The mother sought damages "for severe shock and emotional trauma" caused by witnessing her daughter's injury. *Id.* at 580–81, 336 S.E.2d at 466. To resolve the problem of disproportionate liability [3] which could arise from the recognition of bystander liability, the court approved the analysis of *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), in which the California Supreme Court adopted a "foreseeability" approach to negligent infliction of emotional distress claims. South Carolina incorporated these factors into a cause of action for the negligent infliction of emotional distress with the following elements:

> (a) the negligence of the defendant must cause death or serious physical injury to another; (b) the plaintiff bystander must be in close proximity to the accident; (c) *the plaintiff and the victim must be closely related;* (d) the plaintiff must contemporaneously perceive the accident; and (e) the emotional distress must both manifest itself by physical symptoms capable of objective diagnosis and be established by expert testimony.

---

**3.** *See* F.P. Hubbard & R.L. Felix, *The South Carolina Law of Torts* 41–43 (2d ed. 1997) (discussing limits to liability in cases involving emotional distress claims).

*Kinard,* 286 S.C. at 582–83, 336 S.E.2d at 467 (emphasis added). With these factors, the court made a policy decision to limit the duty of a tortfeasor to certain foreseeable bystander victims—those who witness the event and are closely related to the victim. Bray is not related to Blackmon, and under a *Kinard* analysis, it is not foreseeable that she would be injured by witnessing his death. As a bystander, she cannot maintain a negligence action for the infliction of her emotional distress. The fact that the subject of the action is an unsafe product does not change the theory of recovery from that of negligence. *See Bragg v. Hi–Ranger, Inc.,* 319 S.C. 531, 462 S.E.2d 321 (Ct.App.1996). Consequently, *Kinard* is controlling, and the trial court correctly granted summary judgment on this cause of action.

## II. Strict Liability Cause of Action

The trial court also ruled that Bray could not maintain a cause of action under a strict liability theory because she failed to meet the requirements of *Kinard.* Bray asserts that *Kinard* is inapplicable to her strict liability action. We agree with Bray that the holding in *Kinard* is not applicable to a cause of action asserting strict liability where she is a user of the product.

In 1974, our Legislature adopted the Defective Products Act ("the Act"). S.C.Code Ann. §§ 15–73–10 to –30 (1976).[4] The Act created a new kind of action. *See Schall v. Sturm, Ruger Co.,* 278 S.C. 646, 647, 300 S.E.2d 735, 736 (1983). In *Schall,*

---

4. Section 15–73–10 provides as follows:

Liability of seller for defective product.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if

(a) The seller is engaged in the business of selling such a product, and

(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) shall apply although

(a) The seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

S.C.Code Ann. § 15–73–10 (1976).

our supreme court made the following observation regarding section 15–73–10:

> It is fair to say that an entirely new species of action came into being with the adoption of Restatement 402A by our General Assembly.
>
> . . . .
>
> ... Neither conduct nor obligation underlie recovery but rather the combination of a defective product with an instance of causally related injury....

278 S.C. at 649, 300 S.E.2d at 736. The Act imposes liability upon the seller and manufacturer of a defective product introduced into the stream of commerce when it causes physical harm to the ultimate user or consumer, or to the property of the user or consumer.

There is no question that Bray was a user of the trash compactor: she operated the controls prior to Blackmon's death. *See Curcio v. Caterpillar, Inc.,* 344 S.C. 266, 273, 543 S.E.2d 264, 267 (Ct.App.2001) (stating that employee performing maintenance on equipment was a "user" of the product). The defective condition of the trash compactor is not an issue before this Court. The remaining issues for consideration are whether Bray suffered physical harm within the meaning of the Act and whether that harm was proximately caused by the product.

The Act requires that the defect cause the user "physical harm." S.C.Code Ann. § 15–73–10 (1976). We conclude that Bray's alleged physical injuries resulting from emotional trauma constitute physical harm within the purview of the Act. The *Padgett* line of cases considers such injuries to be physical injuries or harm. *See Padgett,* 232 S.C. at 605–07, 103 S.E.2d at 271–72; *Spaugh,* 158 S.C. at 30, 155 S.E. at 147; *Mack,* 52 S.C. at 335, 29 S.E. at 908. In *Mack,* our supreme court approved of language using the terms injury and harm interchangeably. 52 S.C. at 335, 29 S.E. at 908 ("If these nerves, or the entire nervous system, are thus affected, there is a *physical injury* thereby produced; and if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect, through some action upon the mind.... The mental condition which super-induced the *bodily harm* in the foregoing cases was fright, but the character of the mental

excitation by which the injury to the body is produced is immaterial." (emphasis added) (quoting *Sloane v. Southern Cal. Ry. Co.*, 111 Cal. 668, 44 P. 320, 322–23 (1896))). It thus appears, by reason of this language, that our supreme court would consider the terms "physical injury" and "physical harm" to be synonymous.

 Under any products liability theory of recovery, the plaintiff must also establish that the product defect was the proximate cause of the injury sustained. *See Small v. Pioneer Mach.*, 329 S.C. 448, 462–63, 494 S.E.2d 835, 842 (Ct.App. 1997). Proximate cause requires both cause in fact and legal cause, or foreseeability. *Id.* The respondents assert the *Kinard* foreseeability factors should be applied. Bray contends that those factors should not be applied in a strict liability setting.

In support of her position that her injuries were foreseeable and that a user of a product may recover for injuries under these facts, Bray cites decisions from other jurisdictions which have confronted the same issue. *See Gnirk v. Ford Motor Co.*, 572 F.Supp. 1201 (D.S.D.1983); *Kately v. Wilkinson*, 148 Cal.App.3d 576, 195 Cal.Rptr. 902 (1984). In *Kately*, a mother and her daughter witnessed the mutilation and death of the daughter's best friend when the mother lost control of her newly acquired ski boat because the steering column locked, causing the boat to circle back and strike the young skier. Although the mother and her daughter were able to pull her from the water, she bled to death in their arms as the boat circled uncontrollably. *Kately*, 195 Cal.Rptr. at 904.

The mother brought an action for negligent infliction of emotional distress against the manufacturer and seller, arguing that she was a bystander who was so close to the victim that she considered her a daughter. *Id.* at 903. The *Kately* court refused to expand the "close relation" requirement in order to allow the mother to recover as a bystander. *Id.* at 907. This kind of claim would have failed in South Carolina also under *Kinard*. However, the court did allow the mother to proceed under her products liability claim as a user of the product. The court held that it was reasonably foreseeable that "[the mother], as the purchaser and an operator of the defective boat, would suffer emotional distress when the boat

malfunctioned and killed or injured another human being," regardless of the nonfamilial relationship between the mother and the victim. *Id.* at 909. Therefore, the mother was allowed to proceed, not as a bystander under a claim of negligent infliction of emotional distress, but as a direct victim because she was a user of the defective product.

In *Gnirk*, the plaintiff exited her vehicle in order to open a gate, leaving her infant son inside. The gears shifted from park into reverse, and the car rolled into a "stock dam." The car became completely submerged, killing the child. 572 F.Supp. at 1202. Interpreting South Dakota law, the district court held that Ford owed the plaintiff an independent legal duty due to her status as a user of the car involved in the incident rather than as a bystander. *Id.* at 1202–03.

Marathon and ARS assert that South Carolina's foreseeability analysis under *Kinard* should be applied in a strict products liability setting. As Marathon and ARS point out, other courts have declined to allow recovery in similar instances, applying the same foreseeability requirements in products liability cases as in negligent infliction of emotional distress cases.

Among cases refusing to apply the foreseeability analysis of *Kately,* Marathon and ARS cite *Straub v. Fisher and Paykel Health Care,* 990 P.2d 384 (Utah 1999).[5] In *Straub,* the Utah Supreme Court applied its requirements for a cause of action for negligent infliction of emotional distress to a products liability negligence cause of action. The court declined to adopt the reasoning of *Kately* and allow recovery under a products liability theory when recovery would not be allowed under a non-products liability action for negligent infliction of emotional distress. *See Straub,* 990 P.2d at 388. However, we find this case unpersuasive for several reasons. First, the

---

5. Marathon and ARS also cite *Croteau v. Olin Corporation,* 704 F.Supp. 318 (D.N.H.1989), *aff'd,* 884 F.2d 45 (1st Cir.1989). In that case, the plaintiff sued in strict products liability for physical injuries sustained from emotional distress caused by a hunting accident. Applying New Hampshire law, the federal court stated that the plaintiff had to prove his injuries were foreseeable by satisfying the *Dillon* factors. *Id.* at 320. However, the plaintiff in *Croteau* failed to raise the argument in the District Court that he was owed a different duty as a "user" of the product, and the case was therefore decided on a bystander basis. 884 F.2d at 46.

Utah Supreme Court rejected the reasoning of the California appellate court in *Kately* because the foreseeability analysis was not compatible with Utah law, which employs the "zone of danger" test of foreseeability. *Id.* Second, strict liability was judicially adopted in Utah, thereby allowing its supreme court to extend or limit its application without regard to statutory interpretation.

We find cases from other jurisdictions on either side of this issue to be of limited help because South Carolina is one of only a few jurisdictions in which strict liability was adopted by statute rather than judicially. *Barnwell v. Barber–Colman Co.*, 301 S.C. 534, 537–538, 393 S.E.2d 162, 163–164 (1989).

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Charleston County Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). "If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning." *Paschal v. State Election Comm'n*, 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995).

As noted above, a cause of action in strict liability under section 15–78–10 is a legislatively created "entirely new species of action" which "renders irrelevant the concept of duty in the traditional setting of tort liability, for recovery may be had even though a seller 'has exercised all possible care in the preparation and sale of his product.'" *Schall*, 278 S.C. at 648–49, 300 S.E.2d at 736 (quoting S.C.Code Ann. § 15–73–10 (1976)). The doctrine of strict liability in tort was not a part of the common law of South Carolina. *Hatfield v. Atlas Enters., Inc.*, 274 S.C. 247, 248, 262 S.E.2d 900, 900–01 (1980). Our supreme court adopted the *Kinard* analysis expressly in connection with a negligence cause of action.

As our supreme court stated in *Barnwell*, "[w]here the legislature has, by statute, acted upon a subject, the judiciary is limited to interpretation and construction of that statute." 301 S.C. at 537, 393 S.E.2d at 163. "It is perhaps unnecessary to say that Courts have no legislative powers . . . .

They cannot read into a statute something that is not within the manifest intention of the Legislature as gathered from the statute itself." *Id.* at 538, 393 S.E.2d at 163. The application of the *Kinard* requirements in a strict liability cause of action would be impermissible legislating. We therefore decline to apply the *Kinard* analysis in this setting. To the extent it is desirable public policy to impose the requirement of a close relationship in the context of a strict liability cause of action, that is a decision for our legislature to make.

Because the statute limits liability to the user or consumer, we perceive no need for a limitation on foreseeable victims to avoid disproportionate liability as our supreme court found necessary in a bystander setting. As Bray argues, it is not unreasonable to conclude that the user of a product might suffer emotional damage if the use of the defective product results in death or serious injury to a third person, irrespective of the relationship between the user and the third person. This argument is in accord with the premise underlying the Act, which recognizes that the cost of injuries which flow from a "product defect" should be borne by the manufacturer or seller rather than the ultimate user. *Fleming v. Borden, Inc.,* 316 S.C. 452, 456, 450 S.E.2d 589, 592 (1994).

## CONCLUSION

Bray's negligence claim fails to fulfill the requirements of *Kinard,* and the trial court properly granted summary judgment on that cause of action. However, the trial court erred by superimposing the bystander analysis of *Kinard* to this statutorily created strict liability cause of action. Therefore, the decision of the trial court is

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

CONNOR and HUFF, JJ., concur.